UNITED STATES of America,
Appellee,

v.

John Edward DEERE, Defendant-Appellant.

No. 805, Docket 33896.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1970.

Decided July 6, 1970.

Paul V. French, Asst. U. S. Atty. (James M. Sullivan, Jr., U. S. Atty., Northern District of New York, Syracuse, N. Y., of counsel), for appellee.

Robert G. Leyden, Albany, N. Y., for defendant-appellant.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

John Edward Deere, who claimed to be a conscientious objector, appeals from his conviction by Chief Judge Foley in the District Court for the Northern District of New York, sitting without a jury, for refusing to report to and submit to induction in the armed forces in violation of 50 U.S.C. App. § 462. The case is rendered difficult by its stark simplicity.

Deere, a resident of Parishville, a village in northern New York, registered with his draft board at Ogdensburg shortly after becoming 18 in February 1966. In his Classification Questionnaire he claimed to be a conscientious objector, requested Special Form 150 in order to apply for an exemption on that basis, and added that:

I do not believe in participating or taking any part of active duty or not active or having any connection with the Selective or Armed Services in any country, for I believe in the bible and the ten commandments, "Thou

shalt not kill" and also it is no avail to me or any one else to fight or kill for the bible plainly states: "The meek shall inherit the earth." Psalms 37:9–11, 29.

In the Form 150 he responded to the direction to "describe the nature of your belief which is the basis of your [conscientious objector] claim" by writing "My reason is: 'Gods way is love.'" Citing the teachings of the Watchtower and Bible Tract Society of New York, Inc. (Jehovah's Witnesses) as the source of his belief, he noted that "I am not an active member but believe the way they do." He also stated that "I [do not] believe in force to the extent of killing, for in the ten Commandments it states—'Thou shall not kill'" [1] and that he had demonstrated his convictions when faced with "a choice of right or wrong," but elaborated no further.

Following an interview before the Local Board on May 15, 1966, he was classified 1–A by a 5–0 vote, and appealed. A summary of the interview states, under the rubric "Information in cover sheet that registrant believes Local Board overlooked or to which it failed to give sufficient weight": [2]

> Classes himself as a C.O. not an active member of any religious. Wouldn't do any work to serve his military duty. Doesn't believe in any force especially killing. Follows the bible the 10 com. Thou shall not kill. Staying at home not working.

The Local Board, after receiving a negative response from Jehovah's Witnesses to its inquiry whether Deere was a member, again reviewed his file and on July 26 advised him that his "case did not warrant re-opening and reclassification."

The Appeal Board, having tentatively determined that Deere should not be accorded conscientious objector status, forwarded his file to the Department of Justice in accordance with then controlling procedures. The Department made an extensive inquiry about Deere, the results of which were embodied in a résumé dated February 28, 1967. This disclosed that Deere had a poor and disturbed record in the considerable number of schools in various parts of the country he had attended, had rarely been employed, and spent a good deal of time playing pool at a Parishville soda bar. One teacher thought he was serious in saying that war was against his religion; another thought the opposite but conceded lack of familiarity with Deere's religious beliefs. Deere's widowed mother stated that she and her husband were active members of Jehovah's Witnesses, that her children had been instructed in the Witnesses' teachings, but that her son had never been an active member. He had told her he did not "believe in fighting or serving in the armed forces, as the Bible teaches 'Thou shalt not kill.'" The most damaging item in the résumé was the report that:

> As far as the registrant's sincerity in regard to his religion, she feels "he has forgotten all he learned about church."

One of Deere's brothers had served in the United States Army for four years and had signed up for two more; another had successfully asserted conscientious objection and was working in a hospital. Deere's sister vouched for his sincerity. The other evidence was equivocal.

Deere was furnished a copy of the résumé and given an opportunity to be

---

1. Deere's omission of the bracketed words was an obvious oversight; the meaning of his statement is clear. See the Local Board's summary of his interview set out in the text *infra*.

2. Since Deere had not yet been classified at the time of his interview, he could

not have known whether the Local Board had overlooked anything. The form mistakenly used by the Board was designed for summarizing a personal appearance, which takes place after classification, 32 C.F.R. § 1624.1 & .2, not for an interview before classification. See Paszel v. Laird, 426 F.2d 1169 (2 Cir. 1970), n. 2.

heard, of which he did not avail himself. In October 1967, the Department of Justice advised the Appeal Board of its conclusion that Deere had not sustained the burden of bringing himself within the exempted class in the face of the apparently adverse impression he had made upon the Local Board. The Appeal Board forwarded the Department's recommendation and the résumé to Deere and gave him 30 days in which to reply. When he failed to do so, the Appeal Board classified him 1–A by a 4–0 vote. He refused to report for induction.

Having been indicted, Deere elected a bench trial. The only witnesses were the secretary of the Local Board, who attested various records but knew nothing of the Board's deliberations, and the defendant. Deere's testimony did not differ essentially from what has been recounted. He conceded he had not engaged in the Witnesses' activities of distributing pamphlets but said he had attended meetings whenever he could. He admitted having received the résumé and the Department of Justice letter but claimed he had not read them. He did not think his mother "had the right to comment about what I knew or what I didn't know"; in any event that was "her conception." Acknowledging the case to be difficult, the judge thought the portion of the résumé about Deere's church attendance and the Local Board's observation of his demeanor and attitude afforded a sufficient "basis in fact" for the 1–A classification by the Appeal Board.[3]

This is not a case like Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 158, 98 L.Ed. 132 (1953), on which Deere relies, where "objective facts" about the registrant's behavior supported his claim to a ministerial exemption and the Court held that under such circumstances "dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the [Selective Service] Act and foreign to our concepts of justice." Rather, as in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the issue is the registrant's state of mind and there are no "objective facts" to support the claim. But here the Government lacks the aid it had in Witmer, 348 U.S. at 382–383, 75 S.Ct. 392, of inconsistent statements reflecting on the registrant's sincerity. Absent also are the long delay in asserting the claim and the other adverse factors that formed the basis for this court's decision in United States v. Messinger, 413 F.2d 927, 932 (2 Cir. 1969). While the grounds for Deere's conscientious objection were not stated with the eloquence often encountered and the strength of the registrant's statement is by no means irrelevant on the issue of sincerity, we agree "that not only the articulate may qualify * * *." United States v. James, 417 F.2d 826, 829 (4 Cir. 1969). All we have here in the way of a "basis in fact" to support rejection of Deere's claim is the uninformed doubt voiced by an unidentified teacher, the ambiguous remark of the mother, the lack of substantial corroboration, Deere's failures to take advantage of opportunities to counter the résumé and the Department's adverse conclusions, plus—and clearly this is what tipped the scale—the adverse reaction of the Local Board. We think this would suffice if but only if the Local Board in fact doubted Deere's sincerity and had a rational basis for doing so.

In United States v. Corliss, 280 F.2d 808, 812–816 (2 Cir. 1960), we had a problem similar in some respects and different in others. We there cited the statement in United States v. Simmons, 213 F.2d 901, 904 (7 Cir. 1954), rev'd on other grounds, 348 U.S. 397, 75 S.Ct.

3. It is this classification, not the Local Board's for which the court must find a basis in fact. Gonzales v. United States, 364 U.S. 59, 63, 80 S.Ct. 1554, 4 L.Ed.2d

1569 (1960); United States v. McGee, 426 F.2d 691 (2 Cir. 1970); 32 C.F.R. § 1626.26.

397, 99 L.Ed. 453 (1955), that the best evidence of a registrant's sincerity "may well be, not the man's statements or those of other witnesses, but his credibility and demeanor in a personal appearance before the fact-finding agency." Accord, White v. United States, 215 F.2d 782, 786 (9 Cir. 1954), cert. denied, 348 U.S. 970, 75 S.Ct. 528, 99 L. Ed. 755 (1955). We recognized that failure to give weight to the Local Board's appraisal of sincerity "would make mere parroting suffice, at least if it antedated the draft call long enough and if it was not accompanied by inconsistent conduct or demonstrable prevarication as to subsidiary facts," but that "to sustain the denial of a claim on a mere *ipse dixit* of lack of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse," 280 F.2d at 814. We were able to avoid the dilemma in that case by finding enough evidence in the record to justify a conclusion that Corliss had not demonstrated a sufficient connection between his long adherence to the Witnesses' teachings and his personal anti-war convictions and that hence the Local Board's conclusion of insincerity was rational and itself sincere. On the other hand, in Capobianco v. Laird, 2 Cir., 424 F.2d 1304, we held that a mere statement by the Local Board of lack of belief in sincerity, unaccompanied by any supporting detail, was not enough to overcome a claim of conscientious objection that was impressively developed and extensively corroborated. Cf. O'Brien v. Resor, 423 F.2d 594 (4 Cir. 1970).

Here we are wholly uninformed why the Local Board denied Deere's claim. Although the Government assumes the Board thought him insincere, we do not even know that, much less why. For all that appears the Board might have thought that active church attendance was required to sustain a conscientious objector claim or even that Deere was a ne'er-do-well who would benefit from the discipline of military service. On the other hand, it is entirely possible that developments at Deere's personal appearance could have provided a sufficient basis for the Board to conclude that he had no real attachment to the religious views of the Witnesses and was merely utilizing his family's adherence as a convienient way to avoid military service.

█ Although on this record we cannot conscientiously affirm Deere's conviction, we are not required to take the polar position of reversing with instructions to dismiss the indictment. There is no reason why the record should not be supplemented by the Government's calling one or more members of the Local Board to find out what occurred. See United States v. Balogh, 157 F.2d 939, 944 (2 Cir. 1946), judgment vacated on other grounds, 329 U.S. 692, 67 S.Ct. 625, 91 L.Ed. 605 (1947); United States v. Gearey, 368 F.2d 144, 151 (2 Cir. 1966). As we recently said in Paszel v. Laird, 2 Cir., 426 F.2d 1169, 1175, "Despite, or perhaps because of, the narrowness of the scope of review of actions of selective service boards, it is important for courts to know the ground upon which the board acted." See United States v. Haughton, 413 F.2d 736, 742–743 (9 Cir. 1969), and United States v. Broyles, 423 F.2d 1299 (4 Cir. in banc, 1970), the latter arising after the 1967 amendment. If the testimony shows that the Board thought Deere was insincere and had a rational basis for doing so, the conviction may stand. Otherwise it should be set aside and the indictment dismissed.

The case is remanded for this purpose.