———◆———

W. Edward Morgan, (argued) Tucson, Ariz., for defendant-appellant.

Rubin Salter, Jr., (argued) Edward E. Davis, U. S. Atty., JoAnn D. Diamos, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and PENCE *, District Judge.

DUNIWAY, Circuit Judge:

French appeals from his conviction of violating 50 U.S.C. App. § 462, by his failure to comply with an order from his Selective Service Board to report for induction into the Armed Forces. We reverse.

French testified that he received the order, that he did not report, and that he knew the consequences of not reporting. French filed a claim for classification as a conscientious objector with his local draft board. The board classified him 1–A. He appealed to the Appeal

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Allen Franklin FRENCH, Defendant-Appellant.**

**No. 23834.**

United States Court of Appeals, Ninth Circuit.

July 6, 1970.

---

\* Honorable Martin Pence, United States District Judge, District of Hawaii, sitting by designation.

Board. Under the procedure then in effect he was given a hearing before a representative of the Department of Justice.[1] The Department advised the Appeal Board, first, that French's objections to war were not based on "religious training and belief," and second, "that the registrant is not sincere in his claim." The Appeal Board again classified French 1–A, but stated no reason for doing so.[2]

Because the Appeal Board stated no reason for its decision, we must reverse if one reason given by the Department of Justice for sustaining French's 1–A classification is erroneous, either because it is legally incorrect or because it is not supported by any basis in fact. The reason is that we cannot tell whether or not the Appeal Board relied upon the erroneous ground. Kretchet v. United States, 9 Cir., 1960, 284 F.2d 561; Shepherd v. United States, 9 Cir., 1954, 217 F.2d 942. See also Sicurella v. United States, 1955, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436; United States v. Haughton, 9 Cir., 1969, 413 F.2d 736, 739; Mount v. United States, 9 Cir., 1970, No. 24,902, April 15, 1970); United States v. Jakobson, 2 Cir., 1963, 325 F.2d 409, aff'd sub nom. United States v. Seeger, 1965, 380 U.S. 163, 168, 85 S.Ct. 850, 13 L.Ed.2d 733.

We find that French's beliefs, if they are sincerely held, qualify him for exemption as a conscientious objector. Because the Appeal Board may have reached a contrary conclusion, French's conviction must be reversed.

When French registered for the draft, on June 1, 1964, he wrote "does not apply" in answer to the question on the registration form SSS 100 as to whether he was a conscientious objector. He was ordered to report for a physical examination on August 10, 1965. In response, he returned the notice with a letter saying that he had "[a]fter much deliberation and serious contemplation * * * decided to refuse to participate in the Armed Forces of the United States of America," and that he would also refuse to report for his physical examination. His letter spoke of the importance of freedom and of his opposition to killing. In response his draft board sent him a form for conscientious objectors, SSS 150. He replied saying that he encountered difficulty in filling out the form because "my objection to compulsory military service is only 'religious' in the sense that it involves a code of ethics and a pilosophy that is conscientiously and deeply held. I do not believe in a Supreme Being; and, therefore, my beliefs are not strictly 'religious,' but rather philosophical and ethical in nature." His draft board wrote back telling him to fill out as much of the form as he could and return it, which he did. In an accompanying letter he said that he was unable to sign either I(A) or I(B) which refer to "religious training and belief" because his objection was "not religious, but rather philosophical and ethical in nature." The form did contain the following relevant reponses:

3. "I have acquired by beliefs through reading, living, and above all, serious thinking."

5. "The word 'force' is extremely general and requires further qualification, but in general I believe an individual has the right to use measured force for purposes of self defense."

6. "My convictions are not religious, but I would hope that a majority of my past actions would demonstrate the depth and consistency of my convictions."

1. 50 U.S.C.App. § 456(j) Act of June 24, 1948, ch. 625, § 6, 62 Stat. 609. The Military Selective Service Act of 1967, 50 U.S.C.App. § 456(j) deleted the Department of Justice Hearing.

2. The action of the Appeal Board was a *de novo* determination, based upon evidence that was not before the Selective Service Board when it made the classification decision from which French appealed. Thus we are here concerned only with the action of the Appeal Board. Bishop v. United States, 9 Cir., 1969, 412 F.2d 1064; Storey v. United States, 9 Cir., 1966, 370 F.2d 255; Tomlinson v. United States, 9 Cir., 1954, 216 F.2d 12.

He also referred to his previous letter.

Shortly thereafter, he received another order to report for a physical examination. In reply, he wrote:

"I have stated my moral convictions regarding war and conscription. I was sent a Conscientious Objector form, which I could not fill out completely, due to its faulty assumption that my claim for exemption is religious in nature.

All I can do is repeat that I am an atheist, but oppose war and conscription on philosophical and moral grounds—and must, therefore refuse to participate in the Armed Forces of the United States—whatever the consequences."

Some months later, he was given a hearing before his draft board which summarized his statements as follows:

"He stated then that he was a part-time student at the University but that he did not feel he should be classified 1–A because he was opposed to war and conscription on philosophical grounds. He stated he was not a conscientious objector on religious grounds, because he did not believe in a supreme being—he believed only that life was good and death was bad.

He was then asked if he belonged to any organization or sect which perhaps lead him to believe as he does. He replied by saying that he had formed these opinions through reading, through attending classes at the University, and not because he belonged to any specific organization or sect. He further stated he valued human life above all other things. He stated he believed the human being has a choice of existing or not existing so one should be allowed to exist or not exist if he wishes. He stated that by allowing himself to be inducted he would be asked to kill other individuals—this he felt he could not do within the bounds of his beliefs or principles. He stated he felt a man should be allowed to pursue his own happiness as long as he does not violate the rights of any other individual.

When the registrant [was] asked how he felt about self-defense—he replied he did not know what he would do but that he had grave doubts about killing another individual under any circumstances. He continued by saying that he felt the draft was not justified and that he did not believe in conscription. He stated that it was his feeling that it was irrational to pursue freedom by force.

* * * He stated that if he could not follow his beliefs his life would not be worth while. However, he felt there were no rational reasons for believing in God. He did state he believed most laws were rational and were made to protect his rights and rights of other individuals."

Finally, his statements at the hearing before a hearing officer for the Department of Justice are summarized in the Department's letter to the Appeal Board:

"He stated to the Hearing Officer that he is an atheist and opposes war and conscription on philosophical and moral grounds. His objections consisted of the argument that he is a free individual who rejects all attempts either by government or by individuals to deprive him of his right of freedom of choice and pursuit of happiness. He stated that the use of violence in any form offends his moral conscience."

It is apparent that French's beliefs can indeed be described as "political, sociological or philosophical," or based on "a merely personal moral code," depending upon how one defines those terms. 50 U.S.C. App. § 456(j). But the fact that these may be some of the bases of his belief is not enough to deny him exemption. As we said in United States v. Haughton, 9 Cir., 1969, 413 F.2d 736, 741: "Otherwise, qualified registrants might have to politically and morally support what they religiously oppose." See also Fleming v. United States, 10 Cir., 1965, 344 F.2d 912.

In Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308,

**394**

the Supreme Court has again construed the language of 50 U.S.C. App. § 456(j). The beliefs expressed by French are remarkably similar to those of Welsh. Like Welsh, French could not sign the statement that "by reason of religious training and belief" he was conscientiously opposed to war in any form. Like Welsh, French's beliefs were stated to be deeply held, so deeply that he preferred to go to jail rather than serve in the Armed Forces. Like Welsh's, French's beliefs were formed by reading and thinking. Each apparently thought that the statute meant "religious" in a more orthodox sense than that given to it by the Supreme Court. The beliefs of neither can be said to rest "solely upon considerations of policy, pragmatism or expediency." Welsh believed that the taking of life was morally wrong, that a human life is valuable in and of itself. French believed that life was good and death was bad; he valued human life above all other things. If Welsh was entitled to exemption, so was French, unless he was insincere in stating his beliefs. But, as we have said, the Appeal Board may not have relied upon that ground.

The judgment is reversed.