**UNITED STATES of America**
v.
**Peter Kenly CROWNFIELD, Appellant.**
**No. 19203.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1971.

Decided March 19, 1971.

---

11. *See* Independent Petroleum Workers of N. J. v. Esso Standard Oil Co., 235 F.2d 401, 405 (3d Cir. 1956).

Joseph Fisch, Somerset, N. J., for appellant.

Frederick W. Klepp, Asst. U. S. Atty., (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief) for appellee.

Before SEITZ, VAN DUSEN, Circuit Judges, and MASTERSON, District Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendant, Peter Kenly Crownfield, was convicted on May 21, 1970, of knowingly refusing to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462(a). In this appeal, we are asked to consider the applicability of our recent decision in *Scott v. Commanding Officer*, 431 F.2d 1132 (3d Cir. 1970), to Selective Service proceedings brought before the date of that decision and, more particularly, before the enactment of the 1967 amendments to the Selective Service Act.

In July 1962, at age eighteen, defendant registered with his local draft board in Somerville, New Jersey. In early 1964, he was sent a Selective Service classification questionnaire, which he completed and returned to the board after writing "Does Not Apply" in the space provided for claiming exemption as a conscientious objector. Defendant was subsequently granted a student deferment until his graduation from Dart-

mouth College in June 1966. At that point, he was reclassified I-A and was ordered to report for a preinduction physical examination. Defendant so reported on September 12, 1966, and was found qualified under existing standards of acceptability. Two days later, he formally requested that he be reclassified either I-Y (qualified only in time of war or national emergency) or IV-F (not qualified under any circumstances) because of a recent history of back trouble. Only after his local board refused to consider this request did defendant ask for a copy of the necessary form for claiming conscientious objector status (SSS Form No. 150).

Defendant filed Form 150 with his local board on November 9, 1966. On December 12, the board voted to deny his claim and, without any statement of reasons, notified him by means of a classification card (SSS Form 110) that he was being retained in Class I-A. Defendant personally appeared before his local board on January 17, 1967, and submitted a written summary of his beliefs at the same time. Although the board determined that this new information did not warrant a reopening of defendant's classification, again it simply mailed him a Form 110 without indicating the basis for its decision.

On January 23, 1967, defendant appealed his classification to the state appeal board. After tentatively determining that defendant was not entitled to conscientious objector status the appeal board, in accordance with existing regulations,[1] forwarded the file to the United States Attorney for an advisory recommendation from the Department of Justice. Upon the completion of an FBI investigation, defendant appeared before a Justice Department Hearing Officer on January 10, 1968, and was permitted to be heard on the "character and good faith" of his beliefs and to submit still another written statement. The Department concluded that defendant's conscientious objection was neither religious nor sincere and recommended that his claim be denied. After permitting defendant to reply to the Department's recommendation, the state appeal board voted unanimously to classify defendant I-A on May 14, 1968. For the third time, defendant was mailed a Form 110 with no statement of reasons.

Defendant was ordered to report for induction on August 26, 1968. Although he appeared at the induction center on the stated date and submitted to preliminary administrative and medical processing, he refused to submit to induction itself, explaining to the processing officer that "he was a conscientious objector and as such was opposed to 'military service'." Defendant was indicted for knowingly refusing to submit to induction, was convicted by a jury, and was placed on five years' probation conditioned upon the performance for three years of civilian work contributing to the maintenance of the national health, safety, and interest.

On appeal, defendant now urges us to reverse his conviction on the basis of Scott v. Commanding Officer, *supra*, which holds that the rejection of a registrant's prima facie case for conscientious objector status without any statement of reasons vitiates the legality of his induction order. At oral argument the government conceded that defendant made out a prima facie case, and it has never disputed the fact that no Selective Service decision pertaining to defendant's conscientious objector claim has ever been supported by a statement of reasons. Nevertheless, the government contends that Scott should not be applied retroactively to board actions antedating that decision or, in any event, should at least be limited to those conscientious objector applications processed after July 1967, when the Selective Service statute and regulations were amended.

I

The government first refers us to footnote 2a of our opinion in *Scott*,

1. 32 C.F.R. § 1626.25, as amended by Exec.Order No. 10,714 (1957) (rescinded July 4, 1967).

wherein we declined to decide whether the rule of that case should be given retrospective application. While *Scott* is "a clear guide for local board action in the future," the government now argues, it should not be used to upset past board decisions "simply because an administrative agency did not follow a procedure not even thought of, much less required, at the time \* \* \*." The government relies primarily on Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), where the Supreme Court listed the following three criteria as bearing on the question of retroactivity:

"(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

These criteria have been held equally applicable to constitutionally and non-constitutionally based decisions. Halliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); cf. Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

We note initially that other circuits adopting a rule similar to that of *Scott* have applied that rule in subsequent decisions without discussion of the retroactivity issue. *E. g.*, United States v. French, 429 F.2d 391 (9th Cir. 1970); United States v. Deere, 428 F.2d 1119 (2d Cir. 1970); United States v. Simpson, 426 F.2d 286 (4th Cir. 1970). Nevertheless, since the issue has been directly raised here, we feel that it warrants additional discussion.

■■ The Supreme Court has indicated that the first criterion listed in *Stovall* is the most important in determining retroactivity; only if the purpose of the new rule does not "clearly favor either retroactivity or prospectivity" are the other factors considered determinative. Desist v. United States, 394 U.S. 244, 251–252, 89 S.Ct. 1030, 22 L.Ed. 2d 248 (1969). The purpose of our holding in *Scott*, as stated in that opinion, is to ensure meaningful judicial review of administrative action by requiring that the court have some idea of the basis for the decision of a local or appeal board.[2] Scott v. Commanding Officer, *supra* at 1137. It would be difficult to imagine a rule whose purpose more clearly demanded retroactivity than this one. Unlike those rules which are intended to have a deterrent effect and are therefore denied retroactive application to conduct which has already occurred,[3] the requirements of *Scott* go to the very essence of judicial review and cannot be satisfied simply because the draft classification in question antedated our announcement of those requirements. We are unwilling to blindly endorse the rejection of any prima facie conscientious objector claim—whenever made—on the basis of reasons known only to the Selective Service System.

■ The government's argument for non-retroactivity is based primarily on the contention that draft boards should not be penalized for their reliance on the

2. In *Scott*, we were concerned with a local board's refusal to reopen a classification when presented with a subsequent conscientious objector claim. Since such a decision is not subject to an administrative appeal and is therefore "final" for purposes of judicial review, we phrased *Scott* in terms of a requirement upon local boards. Where a local board has in fact reopened and the registrant has proceeded to exhaust his administrative remedies, however, it is the decision of the *appeal board* which must be supported by a statement of reasons. *See* Gonzales v. United States, 364 U.S. 59, 62–63, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960); United States v. Deere, 428 F.2d 1119, 1121 n. 3 (2d Cir. 1970); United States v. Verbeek, 423 F.2d 667, 668 (9th Cir. 1970).

3. *E.g.*, Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

law as it existed prior to *Scott.* As previously stated, the element of reliance is only of secondary importance when the purpose of the new rule clearly favors retroactivity. We note in passing, however, that it was established even before defendant filed his conscientious objector claim that a classification cannot withstand judicial review where the classifying board does not indicate the basis for its decision clearly enough to foreclose the possibility that it relied on an erroneous ground. *See, e.g.,* Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Jakobson, 325 F.2d 409, 416–417 (2d Cir. 1963), aff'd sub nom., United States v. Seeger, 380 U.S. 163, 85 S. Ct. 850, 13 L.Ed.2d 733 (1965); Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954). In light of these and other decisions, the government can hardly claim that the procedure required by *Scott* was "not even thought of" when defendant's application was being processed.

■ Thus, although we express no opinion as to whether *Scott* should be extended to permit the granting of collateral relief, we do here decline to limit its application on direct appeal to classifications made after the date of its announcement. We now proceed to consider whether there is a significant difference between conscientious objector claims processed before July 1967 and those processed after that date.

## II

In United States v. Deans, 436 F.2d 596 (3d Cir. 1971), we specifically reserved decision on whether *Scott* should apply to registrants who exhausted their administrative remedies under the procedures which were in effect prior to July 1967. In contending that it should not, the government relies upon United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970) (en banc), the Fourth Circuit counterpart of *Scott,* where a majority of the court stated in dictum: "Prior to 1967 there was little need for a local board to state the reasons for an adverse

decision on a claim of conscientious objection." 423 F.2d at 1305. We cannot agree.

Before the 1967 amendments to the Selective Service statute and regulations, an appeal from the denial of a conscientious objector claim was followed by an FBI investigation, a hearing before the Department of Justice, an advisory recommendation by the Hearing Officer to the appeal board, and an opportunity for the registrant to reply to this recommendation. *See* United States v. Deans, *supra* at 602; United States v. Brown, 423 F.2d 751, 756–757 (3d Cir. 1970). This procedure may have served to inform the registrant of the evidence before the appeal board and afforded a means of rebuttal, but it provided no indication either of the weight the appeal board gave this evidence or of the conclusions it drew therefrom as to the sincerity of the registrant and the legal sufficiency of his beliefs. In no way, therefore, do the procedures in effect prior to July 1967 alleviate our primary concern in *Scott* that effective judicial review of a prima facie claim is foreclosed when the final decision of the Selective Service System is not accompanied by a statement of reasons. As Judge Boreman noted in his dissent to *Broyles*:

> "The mere fact that, under the old procedure, the registrant obtained information which was not reflected in the board's decision or assigned as a basis for its action would provide no assistance whatever to the court in discharging its duty to review."

United States v. Broyles, *supra* at 1309; *cf.* United States v. Callison, 433 F.2d 1024, 1026 (9th Cir. 1970); United States v. French, *supra* at 392; United States v. Deere, *supra*. We think the facts of the present case make this point clear.

In the file which it forwarded to the appeal board, the local board included its summary of defendant's personal appearance. Although the summary fails to specify the basis for the local board's

decision, it does not question defendant's sincerity:

> "Mr. Crownfield objects to military conscription because it tends to restrict the individual & make him conform. He also stated that he is opposed to war & criminal violence but when questioned he admitted he would protect *himself* if attacked.

> "When asked if he believed in God or a Supreme Being he stated not in the sense of a formal religion. He said his beliefs lean more toward Unitarianism than another church." (Emphasis in original)

Later the FBI, in a resume of its investigation, recounted a series of interviews with fifteen persons familiar with the defendant and his beliefs. The resume is replete with glowing accounts of defendant's sincerity and honesty; no one questioned the integrity of his convictions and most described him as "very sincere" in his opposition to war. Nevertheless, the official recommendation of the Department of Justice, which was based on the FBI resume and the findings of the Hearing Officer, concludes both that Crownfield failed to establish "a religious basis for his conviction" and that he was insincere. Indeed, the recommendation placed primary emphasis on the latter ground, citing the facts that defendant had filed his conscientious objector claim only after having been notified that his request for a I-Y or IV-F classification had been rejected, that defendant's attitude and demeanor showed "belligerency and ridicule" toward the Selective Service System instead of "sincerity and good faith," and that defendant's file "was practically devoid of past expressions of religious pacifism."

When it made its decision, therefore, the appeal board had before it a document from the local board dealing solely with the nature of defendant's beliefs, an FBI resume buttressing defendant's sincerity, and a Justice Department recommendation challenging both the legal sufficiency and the bona fides of defendant's claim. The government now concedes that defendant's beliefs, if sincerely held, would qualify him as a conscientious objector. Since the appeal board failed to disclose the basis for its decision, we have no way of knowing whether it erroneously believed that defendant's objections were not sufficiently "religious" or whether it merely resolved against defendant the conflicting evidence bearing on the issue of sincerity. Under the rule of Scott v. Commanding Officer, we hold that defendant's induction order was invalid.

The judgment of the district court will be reversed.