**William G. CALE, Jr.,**

v.

**Thomas N. VOLATILE, Commanding Officer, AFEES,**

**and**

**Secretary of Defense.**
**Civ. A. No. 70–3037.**

United States District Court,
E. D. Pennsylvania.

April 19, 1971.

John David Egnal, Egnal & Egnal, Philadelphia, Pa., for plaintiff.

Louis C. Bechtle, U. S. Atty., Malcolm Lazin, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

Petitioner, William G. Cale, Jr., was inducted into the Armed Forces on November 3, 1970. On that same day he filed this petition for a writ of habeas corpus, seeking his release from the Army on the ground that the Order under which he was inducted was issued in violation of the Selective Service Act of 1967, 50 U.S.C.App. § 451 et seq. and the regulations promulgated pursuant to the Act. Our colleague, the Honorable C. William Kraft, Jr., issued a temporary restraining order preventing respondents from removing petitioner from the jurisdiction of this Court. The parties agreed by stipulation that the restraining order would remain in effect pending adjudication of petitioner's case.

In June, 1969, petitioner was graduated from Pennsylvania State University. Prior to his graduation he had been accepted by the University of Georgia as a Ph.D candidate in the ecology department. On July 15, 1969, Local Board No. 58 reclassified petitioner I-A and on August 5, he requested, by letter, a personal appearance before the local board. Petitioner subsequently enrolled in the University of Georgia.

On January 21, 1970, the local board mailed to petitioner's home notice that his personal appearance was scheduled for January 27. Petitioner's parents received the notice on January 22 and telephoned petitioner in Georgia to advise him of it. On the following day he wrote to the local board, informing them that he would be unable to appear before the board and requested it to consider instead the information contained in his letter. Petitioner's letter stated that he was attending graduate school and teaching undergraduates part time, as well as conducting research under a fellowship from the Atomic Energy Commission. On the basis of these facts, petitioner requested an occupational deferment (II-A). He also advised the board that he had requested several of his colleagues to submit letters supporting his position. The local board received petitioner's letter on January 26 and on the following day met to consider his classification. The board voted 3–0 to retain him in class I-A. The letters from petitioner's colleagues arrived on January 28 and February 2. Petitioner appealed the board's classification, but the Appeal Board again classified him I-A. Following several postponements, he submitted to induction on November 3.

Petitioner alleges that Local Board Memorandum No. 96 (hereinafter LBM 96) which denied occupational deferments to full-time graduate students who engaged in part-time teaching was invalid as an unauthorized interference with the decision-making responsibilities

of the local board. He contends that the board should have determined his II-A claim on the basis of the criterion set forth in § 1622.23(a) of the Selective Service Regulations, 32 C.F.R. § 1622.-23(a) and that the board's reliance instead on LBM 96 rendered petitioner's classification without basis in fact. In addition he argues that the local board erred in failing to consider the letters from his colleagues and in failing to assign reasons for denying his request for a II-A classification.

For reasons hereinafter stated, we conclude that the order under which petitioner was inducted was valid and his petition for a writ of habeas corpus will be denied.

Initially we must point out that, while petitioner's January 23 letter to Local Board No. 58 cited his status as "a student in a field of high priority in the national interest" as well as his position as a part-time teacher, he does not now claim that he is entitled to a II-A deferment on the basis of preparation for critical skills and other essential occupations under § 1622.22(b) of the Regulations, 32 C.F.R. § 1622.22(b). Nor does he claim that he should be deferred on the basis of his activity in research under § 1622.22(a). Rather, his sole contention is that he should have been deferred on the basis of his status as a part-time teacher.

■ Petitioner's allegation that LBM 96 was invalid is without merit. Section 6(h) (2) of the Selective Service Act of 1967, 50 U.S.C.App. § 456(h) (2), authorizes the President, under such rules and regulations as he may prescribe, to provide for the deferment of persons whose employment is found to be necessary to the maintenance of the national health, safety, or interest. Section 4(g) of the Act, 50 U.S.C.App. § 454(g), provides that:

"The National Security Council shall periodically advise the Director

of the Selective Service System * * * with respect to the identification, selection, and deferment of needed professional and scientific personnel and those engaged in, and preparing for, critical skills and other essential occupations."

Promulgated pursuant to these provisions of the Act, Section 1622.23(c) of the Regulations provides that:

"The Director of Selective Service may from time to time, upon the advice of the National Security Council, identify needed professional and scientific personnel and those engaged in and preparing for critical skills and other essential occupations."

On February 15, 1968, the National Security Council submitted to the Director of Selective Service a "Memorandum of Advice Respecting Occupational and Graduate School Deferments." In this memorandum the Council advised that deferments based on the lists of essential activities and critical occupations should be suspended and that student deferments for graduate students should not be extended beyond the fields of medicine, dentistry and the allied medical specialties. On April 19, 1968, the Director of Selective Service issued LBM 95 which adopted the recommendations of the Council. However, discretion was reposed with the local boards to grant occupational deferments on an individual basis upon a showing of essential community need.[1] Thereafter, on April 25, a measure of that discretion was withdrawn by the issuance of LBM 96, here in question, which provided that the boards were no longer given authority to grant occupational deferments to full-time graduate students who were part-time teachers.

Clearly the action of the Director in issuing LBM 96 was authorized by the Act and the Regulations. Given the authority, upon advice from the National Security Council, to identify needed per-

---

1. On April 23, 1970, LBM 95 was amended by deleting the portion authorizing the local boards to grant occupational deferments in individual cases. As LBM 96 was no longer necessary, it was rescinded on June 22, 1970.

sonnel and those engaged in critical occupations, the Director here determined that graduate students were not, on the basis of activity in part-time teaching, such needed personnel.

■■ Furthermore, contrary to petitioner's contention, LBM 96 does not interfere with the decision-making authority of the local boards. The boards are given authority under § 1622.23 of the Regulations, 32 C.F.R. § 1622.23, to grant an occupational deferment to a registrant engaged in necessary employment after determining that:

(1) The registrant is, or but for a seasonal or temporary interruption, would be, engaged in such activity.

(2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.

(3) The removal of the registrant would cause a material loss of effectiveness in such activity.

Thus, after an occupation has been determined to be sufficiently essential to give rise to a deferment, the local boards decide whether an individual registrant, because of his particular activity within that occupation, should be deferred. However the local boards do not make the initial determination of what occupations are subject to deferment. LBM 96 is directed to this latter determination and does not usurp the function of the local boards. As we conclude that LBM 96 was valid, we must reject petitioner's contention that his I-A classification was without a basis in fact.

■ Petitioner's second argument is that the local board erred in not considering the letters from his colleagues which arrived subsequent to the board's classification of petitioner in class I-A. As we interpret petitioner's argument, the local board should have reopened his classification upon receipt of the letters, and its failure to do so constituted a denial of due process, notwithstanding subsequent review of his entire file by the appeal board. See United States ex

rel. Vellrath v. Volatile, 308 F.Supp. 1025 (E.D.Pa.1970). Clearly petitioner is correct in contending that where a registrant presents evidence creating a prima facie case for a new draft classification the local board is required to reopen the classification. This is so despite the language of § 1625.2 of the Selective Service Regulations which indicates that such a reopening is discretionary. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), United States v. Turner, 421 F. 2d 1251 (3rd Cir. 1970). In the instant case, however, the letters submitted to the local board did not create a prima facie case for reclassification. A prima facie case is made out by the presentation of facts not considered when the registrant was classified, which if true, would justify a change in the registrant's classification. Selective Service Regulations § 1625.2, 32 C.F.R. § 1625.2. The letters here did no more than corroborate petitioner's letter which had already advised the local board that petitioner was a full-time graduate student engaged in part-time teaching. Therefore they failed to create a prima facie case for two reasons: They did not present any facts which had not already been considered by the local board when petitioner was classified, and, in view of LBM 96, the facts presented, even if true, would not have justified a change in petitioner's classification. Consequently, the local board was not obliged to reopen petitioner's classification upon receipt of the letters.

■ Finally, petitioner urges that we should extend the holding of Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970) and hold that petitioner's induction order was invalid because of the local board's failure to state reasons for its denial of his request for a II-A classification. We do not believe that such a holding would be a logical extension of Scott and decline to adopt it.

In Scott, the Court held that a local board's rejection of a registrant's prima facie case for conscientious objector sta-

tus without any statement of reasons vitiates the legality of his induction order. United States of America v. Crownfield, 439 F.2d 839 (3rd Cir. 1971). There the Court was faced with the difficulty of speculating as to which of several conceivable reasons, some proper and some improper, gave rise to the board's rejection of the registrant's claim. No such problem is presented here. The local board had been directed by LBM 96, clearly mandatory in tone, that registrants of petitioner's status were not to be considered for II-A deferments. As the basis of the board's rejection of petitioner's II-A claim is therefore clear, and we have previously determined that the basis was a proper one, the factors compelling the holding in *Scott* are not present in the instant case.

Accordingly, the petition for a writ of habeas corpus will be denied. The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a).

### ORDER

And now, this 19th day of April, 1971, it is ordered that the petition for a writ of habeas corpus is denied.

There is probable cause for appeal.