UNITED STATES of America

v.

**Neal Thomas NEAMAND, Appellant.**

No. 71–1252.

United States Court of Appeals, Third Circuit.

Argued Sept. 20, 1971.

Decided Nov. 16, 1971.

Harry A. Dower, Allentown, Pa., for appellant.

Laurence M. Kelly, Asst. U. S. Atty. (S. John Cottone, U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before VAN DUSEN, ALDISERT, and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

■ In 1970 we announced the rule that where there is a request for reopening of a classification based on the existence of conscientious objector belief, and the registrant has established a *prima facie* entitlement, the local board must buttress any denial of such request with a statement of reasons for its action. Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970). This appeal from a conviction, D.C., 302 F.Supp. 1296, for refusing to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462(a) requires us to decide whether the *Scott* rule should have been applied to the circumstances of this case.

■ Although it is questionable that a *prima facie* case of conscientious objection was presented, the request for reclassification was made before the Supreme Court rendered the milestone decisions in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) (opportunity for full administrative review is indispensable); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (a registrant's moral, ethical, or religious belief held with the strength of traditional religious convictions qualified under § 6(j)); Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (conscientious objection to a particular war does not qualify); and Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971) (crystallization of a conscientious objector belief after receiving notice of induction was a circumstance over which the registrant had control).[1]

---

1. 32 C.F.R. § 1625.2 provides that where a request for reopening is made after notice for induction, the changed circumstances which support the request must be those

After Neamand registered on November 14, 1960, his first classification was II–S, student, issued April 22, 1963. He was reclassified II–S on November 25, 1963, and classified I–A on June 22, 1964. On July 27, 1964, he was again classified II–S. On April 11, 1966, he filed a Form 150 requesting I–O status, conscientious objector. Without acting on this request, the board again classified Neamand II–S on June 22, 1966; and on September 21, 1966, I–A. On November 22, 1966, he was given an occupational deferment, II–A, and was again classified I–A on December 12, 1967.

Throughout this entire period he continued to file material with the local board supporting his request for I–O status. On January 23, 1968, the board made the formal rejection of the conscientious objection claim, deciding, without stating reasons, that the information submitted by Neamand by letter dated January 9, 1968, did not warrant the reopening of his classification. The state appeal board, also without stating reasons, affirmed the local board's classification on April 16, 1968. On April 24, 1968, he was mailed a notice to report for induction on May 7, 1968. After refusing induction on June 11, 1968, Neamand filed a second Form 150 on November 25, 1968.

Neamand testified at his trial that when he filed the first 150 Form in April of 1966: "* * * I viewed myself as a selective conscientious objector. In other words, a person opposed solely to the war in Vietnam. * * *" His 1966 Form 150 supports this characterization. Additionally, he testified that at the time of the filing of his first Form 150 he was told by the local board's secretary that "unless I was a Maronite or

Quaker or Mennonite or something like that I wouldn't have a chance of getting a conscientious objector rating."

Neamand asserted that from the time of his original selective objection, asserted in 1966, his views began to change, culminating in an abhorrence of all war:

[T]he experiences I had in Europe in meeting quite a number of people and talking to people, the experience I had in Washington when I participated in the protests in October of 1967, the experiences I had over the past summer and the experience I've had in regard to [a book] store that my sister and I opened in Bethlehem, have all led me to believe that my initial presentation of a selective conscientious objector was indeed wrong and certainly wrong now, and that now I feel nothing can be achieved by violence, and there's absolutely no sense in resorting to violence.

Asked when his belief of conscientious objection to all war crystallized, he said, "It's very difficult for me to say exactly when it occurred. * * * "

The second 150 Form, and the beliefs asserted therein, could not be considered as a defense to the criminal charge for which appellant was convicted. The crime was made out on June 11, 1968, when he refused induction. In United States v. Noonan, 434 F.2d 582, 585 (3d Cir. 1970), we held that a registrant may not convert a belated attempt for reopening a classification "into a legal defense to the crime he committed * * * earlier." This is not to say, however, that the maturation of one's belief is not a proper subject for consideration by the federal courts within the limited confines of judicial review of selective service classifications.[2] "It is

---

over which the registrant has no control. The effect of *Ehlert* is that a belated crystallization will not qualify under § 1625.2. In so ruling, the Supreme Court adopted a view contrary to that espoused by this circuit in another significant aspect of our *Scott* decision.

2. Because judicial review is circumscribed, the courts have been zealous in protecting the procedural rights of registrants. Except for the extremely limited circumstances exemplified by Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Breen v.

now axiomatic in Selective Service cases that the standard of judicial review of classifications by a local board is whether there is basis in fact for the board's classification." United States v. Carroll, 398 F.2d, 651, at 653 (3d Cir. 1968); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); 50 U.S.C. App. § 460(b) (3).

■ "Because of the narrowly limited scope of judicial review available to a registrant," Mulloy v. United States, supra, 398 U.S. at 416, 90 S.Ct. at 1771, and because the opportunity to exercise it is similarly straitened, the courts have been generous in extending maximum procedural protection to all registrants. Thus, failure to reopen where a *prima facie* case for reclassification is claimed has been consistently held to be a denial of due process, Mulloy v. United States, *supra*; United States v. Turner, 421 F. 2d 1251 (3d Cir. 1970), because under 32 C.F.R. § 1625.11 reopening of the classification is a passport to an administrative appeal. Moreover, *Scott* requires a statement of reasons where the denial of a *prima facie* claim is present. "The purpose of our holding in *Scott*, as stated in that opinion, is to ensure meaningful judicial review of administrative action by

requiring that the court have some idea of the basis for the decision of a local or appeal board." United States v. Crownfield, 439 F.2d 839, 842 (3d Cir. 1971). "Because conscientious objector status may be grounded in highly sophisticated beliefs, is extremely subjective in nature, and may, at times, be most difficult to demonstrate by objective standards, the requirement of a statement of reasons serves the dual purpose of affording a modicum of protection to the registrant and of providing a framework for intelligent administrative and judicial review of the board's decision." United States v. Stephens, 445 F.2d 192, 197 (3d Cir. 1971) (Concurring Opinion).

We put aside the question whether Neamand's January, 1968 request for reopening met the orthodox test for a *prima facie* case.[3] Our concern is not so much for the *facts* alleged by the registrant, as it is over the fluid state of selective service *law* during the time when Neamand's request was before the board for consideration. At the time of his request, the local boards did not have the benefit of *Welsh* (June 15, 1970) and *Gillette* (March 8, 1971). But there had been authoritative opinions from highly respected authorities which pointed a direction giving some support to Neamand's original selective war stance.

Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Bucher v. Selective Service, 421 F.2d 24 (3rd Cir. 1970) and Hunt v. Local Board No. 197, 438 F.2d 1128 (3rd Cir. 1971), a registrant is denied the opportunity for court review of his classification "until after induction * * * or until defense of the criminal prosecution which would follow should he press his objections to his classification to the point of refusing to submit to induction. Estep v. United States, 327 U.S. 114 [, 66 S. Ct. 423, 90 L.Ed. 567] (1946); Falbo v. United States, 320 U.S. 549 [, 64 S.Ct. 346, 88 L.Ed. 305] (1944)." Clark v. Gabriel, 393 U.S. 256, 259, 89 S.Ct. 424, 426, 21 L.Ed.2d 418 (1968). Because testing by in-service, post-induction procedures is especially repugnant to those who have conscientious scruples about donning a uniform, the criminal prosecution is the usual vehicle utilized to obtain

a judicial review of their classification. Mulloy v. United States, 398 U.S. at 416, 417, n. 6, 90 S.Ct. 1766.

3. "Procedurally, the prima facie case is a standard designed to determine whether the quantum of evidence presented is sufficient to support a finding. One charged with the duty to decide whether such a case has been made out must accomplish an exquisite intertwining of functions. He must act not only as a fact-finder, but also as an evaluator of those facts. * * * In selective service cases, a prima facie case is present if a registrant has presented facts which, if true and uncontradicted by other information contained in the file, would be sufficient under the regulations to warrant granting his requested classification * * *'." Hunt v. Local Board No. 197, *supra*, 438 F.2d at 1144 (Dissenting Opinion).

See, *e. g.*, United States v. McFadden, 309 F.Supp. 502 (N.D.Cal.1970), Zirpoli, J.,[4] finding § 6(j) of the Act unconstitutional; United States v. Sisson, 297 F. Supp. 902 (D.Mass.1969), Wyzanski, J.[5] And of course, Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) long ago held there was a valid distinction between secular wars and "theocratic wars."

■ With distinguished jurists grappling with a sophisticated subject of momentous sociological, religious, political and psychological ramifications, and groping for a uniformly acceptable solution, we can scarcely fault local boards if they err in applying the basis-in-fact test. But the vexatious problem of adequate review becomes more difficult when, as here, there is no clue, orally or by written memorandum, as to the basis-in-fact for Neamand's classification. We need not rehearse the obvious; a registrant will be classified I–A, unless he meets his burden of persuading the local board that he belongs into an exempt or deferred classification. United States v. Brown, 423 F.2d 751, 754, n. 7 (3d Cir. 1970). But where a claim is made, as here, for conscientious objector status, and the sole record on review is a notation that the claim was considered and rejected, and there is no explanation for the rejection, a very real problem arises as to whether the registrant has been afforded due opportunity for adminis-trative or judicial review of the local board's action.

■ Manifestly, the problem is exacerbated when, as here, there was a twenty-month delay between the time the Form 150 was filed in April, 1966 and the time it was formally acted upon in December, 1967.[6] Moreover, this procedural delay brings into focus the effect of the *Ehlert* holding. A prompt adjudication of the 1966 request for conscientious objector status, supported with a statement of reasons for denial, conceivably could have afforded the registrant an opportunity to elucidate and further articulate his views. The second Form 150, which was timely filed under our pre-*Ehlert* ruling in *Scott* and which did not evince the selectivity later held non-deferrable in *Gillette*, was filed only nine months after the formal rejection of his conscientious objector claim.

■ Under these circumstances, we find it difficult, if not virtually impossible, to discharge our judicial function without some indication of the rationale underpinning the board's action. Even our stringently constructed scope of review will not permit us to legitimate a classification imposed by a local board through misapplication or misimpression of the law. Where this occurs, more than the basis-in-fact test surfaces for judicial review. As we stated in United

4. "Since no compelling state interest exists justifying the invidious discrimination against Catholic selective objectors, section 6(j) violates equal protection and due process of law." 309 F.Supp. at 508. Previously the court noted: "Catholic doctrine perceives a difference between wars, classifying some as 'just' wars and others as 'unjust' wars. See St. Thomas Aquinas, Treatise on Law 72 (Gateway Ed. 1949)." 309 F.Supp. at 504.

5. "Sisson's case being limited to a claim of conscientious objection to combat service in a foreign campaign, this court holds that the free exercise of religion clause in the First Amendment and the due process clause of the Fifth Amendment prohibit the application of the 1967 draft act to Sisson to require him to render combat service in Vietnam." 297 F.Supp. at 910.

6. Testimony of Minnie W. Brown, executive secretary of Local Board 114, Bethlehem, Pennsylvania:
 THE COURT: In other words, if I understand this correctly, Form 150 application was made on April 11, 1966, but wasn't formally acted upon because of this 2–S request which is of a lower grade and entitled to priority.
 MRS. BROWN: That's correct.
 THE COURT: But the Form 150 was not formally acted upon until December, 1967?
 MRS. BROWN: December of 1967.

States v. Crownfield, *supra*, 439 F.2d at 843:

> \* \* \* it was established [prior to *Scott*] even before defendant filed his conscientious objector claim that a classification cannot withstand judicial review where the classifying board does not indicate the basis for its decision clearly enough to foreclose the possibility that it relied on an erroneous ground. *See, e. g.*, Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403 (1955); United States v. Jakobson, 325 F.2d 409, 416–417 (2d Cir. 1963), aff'd sub nom., United States v. Seeger, 380 U.S. 163, 85 S. Ct. 850, 13 L.Ed.2d 733 (1965); Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954).

Indeed, the latest pronouncement by the Supreme Court in selective service law overturned a classification of a local board because the record did not exclude a classification through error of law. Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).

 Clearly, a local board rejection of all requests for I–O status unless the registrant proved he was a "Quaker or Mennonite," would have contravened Welsh v. United States, *inter alia*, and if such was the reason for the board's decision, the classification would not survive judicial review. Similarly if, after considering his Form 150 and the supporting materials—a statement that he was influenced by Erich Fromm, letters from university faculty associates, his offer "to serve my country in any humanitarian, democratic, or constructive capacity," the poem and prose materials authored by the registrant—the board concluded that he was sincere and would have qualified except that this belief did not emanate from traditional religious convictions, the board could have erred in law. If, however, the board rejected the claim because it properly predicted the ultimate result of Gillette v. United States, and announced a finding, as it conceivably could have here, that the registrant's first Form 150 and supporting material amounted to no more than an objection to a particular war, we would experience no difficulty in sustaining its action.

Stated simply, faced with a record that is silent, we just do not know why the board rejected this registrant's claim; on the basis of the testimony adduced at trial and the selective service file we do not know whether the board relied on an erroneous ground. Accordingly, we are persuaded that if the reasons underlying the *Scott* rule are valid and respectable, their application is justified and warranted here; findings by the board should have been mandated under the circumstances which underlie this appeal. Since appellant's selective service file contains no statement of the reasons for the board's refusal to reopen the classification, we hold that his induction order was invalid. Accordingly, we reverse the judgment of conviction.

We are quick to add that in this decision we are not promulgating an absolute rule for all cases. We hold merely that, under the circumstances of this case, we cannot countenance a conviction which springs from bare administrative action appearing so perfunctory that reasonable review of its legitimacy is impossible.

 The recent · Draft Extension Act,[7] recognizing the need for adequate due process safeguards for registrants, now requires that a statement of reasons be given, upon request, whenever "a decision adverse to the claim of a registrant" is made.[8] We heartily en-

---

7. Public Law 92–129, 92nd Cong., 2nd Sess., H.R. 6531, September 28, 1971.

8. Sec. 22 now provides:
 (a) It is hereby declared to be the purpose of this section to guarantee to each registrant asserting a claim before a local or appeal board, a fair hearing consistent with the informal and expeditious processing which is required by selective service cases.
 (b) Pursuant to such rules and regulations as the President may prescribe—
 (1) Each registrant shall be afforded the opportunity to appear in person before the local or any appeal board of

dorse this statutory directive, and urge that the spirit manifested therein be fully embraced by local and appeals boards throughout this circuit. Thus, we cannot emphasize too strongly that a statement of reasons be given, whether requested or not, whenever a conscientious objector claim is denied. The findings need not be elaborate. Depending upon the circumstances, the board could report, *inter alia:* we find the registrant incredible; we find him insincere; we find his request to be of bad faith; we find that he is not opposed to all secular wars, but only particular ones; we find that his belief includes essentially political, sociological, or philosophical views not equivalent to a traditional religious conviction; we find that his belief is a "merely personal moral code" not equivalent to such religious conviction. These are but examples of bare-bone findings which might form a basis for administrative or judicial review.

The reality is that local boards daily confront situations in which they reject such claims. They have various reasons for their actions. Surely, it is not imposing a Herculean burden upon them to record these reasons as succinctly or as elaborately as they emerge from the actual decision-making process of the board.

 The large majority of those convictions under 50 U.S.C. App. § 462 which have been reversed by this court disclose failures by the Selective Service System to accord procedural safeguards to registrants.[9] At oral argument, we were told by the Assistant United States

Attorney for the Middle District of Pennsylvania that his office has established a practice of constant review of pending files to determine whether prosecution is warranted under the circumstances of emerging concepts of selective service law. We recommend such a procedure to all United States Attorneys in this circuit. It is suggested that their offices initiate a reexamination of those cases, both at a pre and post indictment state, for the purpose of determining whether a simple remand to the Selective Service System for additional agency action could not serve to cure procedural deficiencies which might otherwise invalidate subsequent prosecutions.

The judgment of conviction will be reversed.

---

the Selective Service System to testify and present evidence regarding his status.

(2) Subject to reasonable limitations on the number of witnesses and the total time allotted to each registrant, each registrant shall have the right to present witnesses on his behalf before the local board.

(3) A quorum of any local board or appeal board shall be present during the registrant's personal appearance.

(4) In the event of a decision adverse to the claim of a registrant, *the local or appeal board making such decision shall, upon request, furnish to such reg-*

*istrant a brief written statement of the reasons for its decision.* (Emphasis added.)

9. United States v. Stephens, *supra;* United States v. Speicher, 439 F.2d 104 (3rd Cir. 1971); United States v. Polites, 448 F.2d 1321 (3rd Cir. 1971); United States v. Nunnally, 448 F.2d 788 (3rd Cir. 1971); United States v. Crownfield, *supra;* United States v. Deans, 436 F.2d 596 (3rd Cir. 1971); United States v. Brown, 436 F.2d 1317 (3rd Cir. 1971); United States v. Thompson, 431 F.2d 1265 (3rd Cir. 1970) and United States v. Turner, *supra.*