446 F.2d 1164
 UNITED STATES of America ex rel. Arthur KAMESHKA, Appellant,
v.
Col. Donald F. NEFF, Commanding Officer, Armed Forces
Examining and Entrance Station, Pittsburgh,
Pennsylvania, and Stanley R. Resor,
Secretary of the Army.
 No. 19383.
 United States Court of Appeals, Third Circuit.
 Argued Dec. 18, 1970.
Decided Aug. 17, 1971.
 
 George E. Schumacher, Esquire, Schumacher & White, Pittsburgh, Pa., for appellant.
 David M. Curry, Asst. U.S. Atty., Pittsburgh, Pa., for appellees.
 Before HASTIE, Chief Judge, and FREEDMAN[1] and GIBBONS, Circuit judges.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 In the court below petitioner Arthur Kameshka, a registered Pennsylvania pharmacist who had been drafted into military service, sought a writ of habeas corpus for release from the Armed Forces on the ground that his I-A classification and resultant induction order were illegal because his employment as a pharmacist in Allegheny County qualified him for a II-A occupational deferment which the local board illegally denied. The district court, 327 F.Supp. 459, denied the writ stating, 'the classification of the petitioner was an exercise of discretion by the Selective Service System which we cannot say lacked a basis in law or fact.' This appeal has been taken from that decision.
 
 
 2
 An examination of this registrant's file reveals the following facts. Appellant is a registrant of Local Board No. 12, Pittsburgh, Pennsylvania. He was originally classified II-S while a student at the University of Pittsburgh School of Pharmacy. On June 6, 1968, after graduation, he was classified I-A by the local board, but received a II-A classification as a result of action by the appeal board on August 21, 1968. On March 27, 1969 the local board again classified the petitioner I-A; but again, on June 25, 1969, the appeal board reversed and classified him II-A.
 
 
 3
 On January 22, 1970, for the third time, the petitioner was classified I-A by the local board; but this time the appeal board concurred with the local board's classification. Following this an appeal was taken by the Pennsylvania State Director of Selective Service to the President and on July 8, 1970, the National Selective Service Board affirmed the I-A classification. Thereafter petitioner was inducted into the Armed Forces on September 15, 1970, following which he filed this petition.
 
 
 4
 We have carefully examined Kameshka's file to determine what basis in fact there was for the denial of his II-A deferment request. 32 C.F.R. 1622.22(a) provides: 'In Class II-A shall be placed any registrant whose continued service is found to be necessary to the maintenance of the national health, safety, or interest in an activity identified as essential by the Director of Selective Service upon the advice of the National Security Council. * * *' Acting on advice of the National Security Council the Director of Selective Service on April 19, 1968 suspended the then existing 'list of critical occupations' leaving within the local board's discretion the determination of which activities are necessary to the maintenance of the national health, safety or interest. L.B.M. issued April 19, 1968, as amended April 23, 1970.
 
 
 5
 Accordingly, a registrant seeking a II-A deferment must now show that the activity in which he is engaged is 'necessary to the maintenance of the national health, safety, or interest.' In addition, he must show that it is essential to the maintenance of the national health, safety or interest that he, personally, continue in the activity. He can do this by proving: (1) that he is actually engaged in the activity, (2) that he cannot be replaced because of a shortage of persons with his qualifications or skill, and (3) that his removal would cause a material loss of effectiveness in such activity. 32 C.F.R. 1622.23(a). Administrative application of each of these requirements, excepting 'engagement in the activity,' involves the exercise of judgment and discretion upon the basis of some justifying facts.
 
 
 6
 On two prior occasions-- August 21, 1968 and June 25, 1969-- it was administratively decided that appellant's employment as a pharmacist in Allegheny County warranted a II-A deferment. In August 1968 the evidence submitted to support appellant's claim included a letter from appellant, together with letters from Max L. Miller, Executive Secretary of the Pennsylvania Pharmaceutical Association; Ronald Macosko, President of the Allegheny County Pharmaceutical Association; Edward Hudak, owner of Bell's Drug Store; and Meyer Rosen, President of Rosen Drug Stores, Inc. In sum, these letters attested that Kameshka was a registered pharmacist in the State of Pennsylvania, employed full time at Bell's Drug Store and doing relief work at two others. They emphasized the critical shortage of pharmacists in the area. For example, Max L. Miller, Executive Secretary of the Pennsylvania Pharmaceutical Association, asserted in a letter dated May 22, 1968, that '* * * Kameshka is making it possible for two (2) important pharmacies to remain open and serve the health needs of two communities thru the proper districution of drugs in Pennsylvania. * * *' The president of the Allegheny County Pharmaceutical Association stated, May 27, 1968: 'There aren't enough pharmacists to go around and relief help is almost impossible to come by.' And Meyer Rosen, president of Rosen Drug Stores, Inc., at which Kameshka performed relief work, stated on May 28, 1968: 'Because of the critical shortage of registered pharmacists in Pennsylvania, it would be almost impossible to replace him, if drafted.'
 
 
 7
 This information, unless contradicted by other evidence in Kameshka's file, constituted a strong prima facie case for a II-A deferment under the standards of the pertinent regulations noted above. Indeed, this must have been the conclusion reached by the appeal board in August 1968.
 
 
 8
 The letters submitted in 1969 were mainly from the same parties and presented essentially the same claims with respect to the need of Kameshka's services and the shortage of persons with his qualifications. At this time Kameshka was employed full time at Slaton's Pharmacy in McKeesport, Pennsylvania. Once more, on June 25, 1969, the appeal board viewed appellant's status as warranting a II-A deferment.
 
 
 9
 On the third occasion, the classification which we review in this appeal, the appeal board acquiesced in the local board's third ruling that appellant's employment as a pharmacist did not warrant a II-A classification. It is true that on this occasion the registrant submitted only two letters, one from himself and the other from his employer, in support of his request. Appellant's letter asserted:
 
 
 10
 '* * * I am a registered pharmacist in the State of Pennsylvania, employed full-time at Slaton's Pharmacy, 1709 Eden Park Blvd., McKeesport. Because of the shortage of pharmacists, it would be very difficult to replace me in this position. Also, because of the shortage, I have done relief work at Kessling Pharmacy, Liberty Boro; Prescription Center, Munhall; Sherman's, Munhall; Berkeley Hills Pharmacy, McKnight Road.
 
 
 11
 'It would be impossible to replace me at these places if drafted. * * * In a recent issue of Drug Topics Nov. 24, 1969), it was stated the ratio of pharmacists per 100,000 population has been dropping. In 1957 it was 66 pharmacists per 100,000; In 1968 it was 61 per 100,000. In the Munhall area this can be seen at Corbett's, Ron Kendall Pharmacy, Prescription Center Pharmacy, Caruso Pharmacy and others-- all stores working with just one man and relief because there is not enough help to go around.'
 
 
 12
 Complementing appellant's claims, the employer's letter asserted:
 
 
 13
 'I would like to request an extension of the critical occupation deferment of Arthur Kameshka, employed by me at my Pharmacy in McKeesport.
 
 
 14
 'There is a shortage of pharmacists in the area. The health and welfare of a community depends upon the services of its pharmacists. There is a shortage and it would be almost impossible to replace him if drafted. * * *'
 
 
 15
 In addition, while appellant did not in conjunction with his 1970 deferment request submit new letters from his parttime employers, or from the County and State Pharmaceutical Associations attesting to the need for pharmacists in appellant's community, his file contained such letters submitted in 1968 and 1969 to support his earlier deferments. The regulations did not place this rather recent information beyond consideration. And since some of the letters were less than a year old, a reasonable assumption, absent evidence to the contrary, would be that the situation remained substantially unchanged. Moreover, we find nothing in the record that provides a basis for a factual conclusion that the situation which warranted the earlier deferments had changed. Cf. Lewis v. Secretary, Dept. of Army, 9th Cir. 1968, 402 F.2d 813, 818 (a hardship deferment case). There is no indication that the need for military manpower had increased or that the need for registrant's services as a civilian pharmacist had decreased.
 
 
 16
 In summary, when considering de novo Kameshka's II-A deferment request in 1970, the local and appeal boards had before them the following in addition to letters from Kameshka in each year: 6 letters supporting his claim in 1968 when the appeal board granted a II-A classification; 4 letters supporting his claim in 1969 when the appeal board again granted him a II-A classification; and 1 letter from his employer supporting his claim in 1970. On his entire file, Kameshka's case appears at least as deserving of a II-A deferment in 1970 as it was in 1968 and 1969 when the appeal board properly classified him II-A. Moreover, while it is true that the regulations provide for annual de novo classification of II-A registrants, they specifically authorize continuation in this II-A class if the situation warrants it. And the regulations are explicit as to the proper standards for this de novo classification. 'The same rules shall apply when classifying a registrant at the end of each successive period for which he has been classified in Class II.' 32 C.F.R. 1622.21(b).
 
 
 17
 The government, stressing the fact that the regulations place the burden on the registrant to show he is entitled to a classification other than I-A, 32 C.R.F. 1622.10, argues that the basis in fact for the denial was Kameshka's failure to present sufficient information for a II-A classification. But on the present record this argument is untenable. It ignores the similar information that led to the two previous II-A classifications by the appeal board. An independent examination of the registrant's entire file, including that information, reveals beyond doubt a prima facie case for deferment. Indeed, in our view the letters from appellant and his employer submitted in 1970 in themselves reveal sufficient information, if believed, to justify a II-A classification, and there is no countervailing matter in the file. In short, the government's argument amounts to the unacceptable proposition that a basis in fact for a I-A classification exists whenever a registrant's file does not irrebuttably establish his right to a lower classification, even though no rebuttal or contrary showing has been made. While a board has wide discretion in acting on a claim for occupational deferment, its adverse action appears to be arbitrary when the record fully justifies the deferment and shows neither facts nor stated reasons that support its denial of deferment. United States v. Pyrtle, 8th Cir. 1970, 423 F.2d 772. This is but a particular application of the established principle that a board's rejection of a registrant's primafacie showing of entitlement to exemption or deferment must be supported by something in the record that indicates the existence of a proper factual basis for that action. Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.
 
 
 18
 The district court seems to have reasoned that the local board made an administrative decision that it would be more useful to the nation to have the registrant in the armed services than to permit him to continue to serve the civilian community as a pharmacist, and that this exercise of administrative judgment is judicially unreviewable.
 
 
 19
 However that may be on many records, this case presents special and unusual circumstances that we cannot ignore. The local board took away registrant's occupational deferment seven months after it had been granted without any showing in the administrative record that there had been any change in military or civilian manpower needs or in any other relevant circumstances. And no showing of changed circumstances was even attempted in the court below. In fact, the only evidence introduced in the court below concerning the basis for the board's action suggests that the board acted arbitrarily. The registrant testified that in April 1970 he visited the board's office to inquire why his classification had been changed and that this colloquy with the clerk of the board ensued:
 
 
 20
 'Well, Mr. Kameshka, I think you have been lucky all this time. I cannot answer for the appeal board, but you know yourself that this board does not consider anything to be critical.' I said, 'Yes, I know. Goodbye.'In addition, the registrant has pointed out that the decision to take away his deferred status was made shortly before his twenty-sixth birthday and that, under existing policies, he probably would not be drafted after he became twenty-six. Ordinarily, this suggestion of the mere possibility of an improper motive for the board's action would be too speculative to merit consideration. Contrast Clay v. United States, 1971, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810. But it is a makeweight where the record does not affirmatively suggest any proper basis for the board's action.
 
 
 21
 All of these circumstances considered, we are convinced that the local board's action in changing registrant's classification from II-A to I-A was arbitrary and without factual support when viewed in the light of the considerations that are set out in the regulations as relevant and controlling.
 
 
 22
 Accordingly, the judgment of the district court will be reversed.
 
 
 
 [1]
 Judge Freedman heard the argument of this appeal but died before decision