**UNITED STATES of America ex rel. Lewis Godfrey BENT, Appellant,**

v.

**Melvin R. LAIRD, Secretary of Defense, et al.**

**No. 71–1570.**

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1971.

Decided Dec. 6, 1971.

Donald L. Doernberg, Levy, Gutman, Goldberg & Kaplan, New York City (Jeremiah S. Gutman, New York City, on the brief), for appellant.

Roger S. Steffens, Asst. U. S. Atty., Trenton, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellees.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Petitioner Lewis Godfrey Bent appeals from an order of the district court denying his application for a writ of habeas corpus. Bent, who on April 14, 1971 submitted to induction pursuant to the Military Selective Service Act of 1967, 50 U.S.C.App. § 451 et seq. (1971), sought in his habeas corpus petition to review the legality of his order to submit to induction. The petition, which is directed to the proper military respondents, alleges that his Local Board improperly refused to classify him III–A— deferred for reason of hardship.

The petition was filed on April 27, 1971 and was served upon the United States Attorney on the same date. On April 27, 1971 the district court issued an order restraining the respondents from transferring Bent from the jurisdiction of the court until they should show cause on June 7, 1971 why a writ of habeas corpus should not issue. The court held a hearing on the petition on June 3, 1971. The record does not disclose why the return date was so advanced. No transcript of the hearing on June 3 was prepared. At that hearing the court received in evidence four exhibits:

G–1  Bent's Selective Service System file.

G–2  A two page transcript of a colloquy before Honorable Milton Pollack of the United States District Court, Southern District of New York, in the matter of United States v. Bent, 71 Cr. 261.

G–3  A certified copy of a nolle prosequi in 71 Cr. 261.

G–4  A certified copy of Indictment, 71 Cr. 261.

No responsive pleading was filed and so far as the record before us discloses, no testimony was taken. On June 11, 1971 the district court filed an opinion and order denying the petition for a writ of

habeas corpus. As ground for the denial, the court's opinion states:

"The petitioner is estopped from attacking the decision of the Selective Service Board by his submission to induction which was followed by the *nolle prosequi* of his indictment in the Southern District of New York. See United States ex rel. Deans v. Clifford, 420 F.2d 30 (3rd Cir. 1970). Once petitioner submitted to induction and was favored by the dropping of the criminal charges against him on the representation that he would serve, he was estopped from challenging his induction. He should seek relief through the Army's administrative remedies."

The facts which were before the district court do not warrant the summary rejection of the petition. We reverse.

Bent is a twenty six year old resident alien who immigrated from Jamaica in 1966. He registered with Local Board 10, Mount Vernon, New York, which on December 6, 1967 classified him I–A. On January 12, 1968 he filed with the Local Board a Dependency Questionnaire (SSS Form 118) and a request for a III–A hardship deferment. On February 8, 1968 the Board mailed him a new notice of classification in Class I–A and a form (SSS Form 212) advising him of his right to a personal appearance and appeal. *See* 32 C.F.R. Parts 1624, 1626 (1971). He replied, requesting a personal appearance and an appeal. The Local Board arranged for a personal appearance and on February 29, 1968, it received additional information from Bent. On March 6, 1968 the Board voted to continue his I–A classification. No reasons were given for the Local Board decision. Bent's file was forwarded to the Selective Service Appeal Board on April 12, 1968. The Board records and the fact that an appeal was permitted make clear that the personal appearance was a reopening of his classification pursuant to 32 C.F.R. § 1625.13. On May 23, 1968 the Appeal Board without reasons continued Bent's I–A classification. He was advised of this action, and on June 3, 1968, he wrote once again outlining the hardship which

would result to his family if he were inducted. On July 1, 1968, however, the Local Board issued an order to report for induction. Despite that order, and for reasons which do not appear in the record before us, the Board on July 8, 1968 granted what its records classify as a "discretionary interview" rather than a personal appearance pursuant to 32 C.F.R. § 1624.1. As a result of this interview the Board postponed Bent's induction pending further review, and he was so notified on July 9, 1968. (SSS Form 264). On that date the Board obtained from Bent a new Dependency Questionnaire. Although the Board records classify the July 8, 1968 interview as a discretionary interview, the scope of the inquiry was actually broader than when it reopened Bent's classification in February, 1968. The Board determined that it would obtain an independent investigation. On July 12, 1968 it wrote to the Department of Public Welfare of the County of Westchester:

"By mutual agreement between the New York State Department of Social Welfare and New York State Headquarters of the Selective Service System, and in accordance with the provisions of the Universal Military Training and Service Act, as amended, it is requested that you make an investigation of the subject person for the reason checked below:

[x]  Request for deferment due to dependency or hardship

\*  \*  \*  \*  \*  \*

Registrant's claim, in brief:

  Support of parents.

We request a statement of facts upon which the local board may determine the registrant's correct classification. The following types of information should be included in your report:

a.  The composition of the registrant's immediate family including name, age, relationship and address.

b.  Income and expenses.

c. Employability of the registrant's dependents.

d. Other information pertinent to the case.

A recommendation or an opinion by your agency is not required."

On August 22, 1968 the Department of Social Services, County of Westchester, Division of Family and Child Social Services replied with a lengthy report of the results of its investigation. Without repeating the details, this report, together with information previously supplied, discloses that Bent arrived from Jamaica in 1966, soon surrounded himself with a mother, father, six siblings and two nieces. To provide shelter for these relatives, he purchased a home on which first and second mortgage payments run $289.94 a month. He also supports an illegitimate child in Jamaica. The report sets forth other significant household expenses. Bent's situation is compounded by the fact that Bent and several of the siblings have undertaken efforts to further their education. The people and numbers set forth in the record fall into that area which Judge Hastie described in United States ex rel. Kameshka v. Neff, 446 F.2d 1164, 1168 (3rd Cir. 1971):

"While a board had wide discretion in acting on a claim for . . . deferment, its adverse action appears to be arbitrary when the record fully justifies the deferment and shows neither facts nor stated reasons that support its denial of deferment. United States v. Pyrtle, 8th Cir. 1970, 423 F.2d 772. This is but a particular application of the established principle that a board's rejection of a registrant's prima facie showing of entitlement to exemption or deferment must be supported by something in the record that indicates the existence of a proper factual basis for that action. Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428."

The Board records disclose no reaction to the report from the Department of Social Services until December 18, 1968. On that date, the Cover Sheet (SSS Form 101) discloses, Bent was classified I–A. No reasons appear for this decision. The fact that a reclassification was made indicates that the July 8, 1968 "discretionary interview" was treated by the Board as a reopening pursuant to 32 C.F.R. § 1625.2. The Selective Service file (Exhibit G–1) does not disclose that any new notice of classification (SSS Form 110) was mailed to Bent, or that he received a form advising him of his appeal rights. (SSS Form 217). He must have been notified of the Board's December 18, 1968 decision in some manner, however, because on December 31, 1968 he wrote to the Board, acknowledging receipt of the I–A classification and requesting an appeal. The Local Board acknowledged the letter and on January 17, 1969 granted an appearance pursuant to 32 C.F.R. § 1624.1. On that date he presented a letter detailing his hardship claim and appeared before a single board member who advised him that his case would be presented for consideration by the full Board at its next meeting. Apparently as a result of a request from the Board, or the Board member who conducted the January 17, 1969 personal appearance, Bent on January 20, 1969 furnished copies of the federal and New York State income tax returns on which he claimed two siblings as dependents.

The Board records disclose no reaction to either the contents of the January 17, 1969 personal interview or the income tax returns until February 5, 1969 when the Cover Sheet (SSS Form 101) discloses, the Board classified Bent I–A. No reasons appear for the classification. The Selective Service file does not disclose that any new Notice of Classification (SSS Form 110) was mailed to Bent or that he received a form (SSS Form 217) advising him of his appeal rights. He must have been notified of the Board's February 5, 1969 decision in some manner, however, because on March 10, 1969 Bent wrote to the Board:

"I have applied to the board for a 3–A classification after stated the position

& responsibility of me towards my family. This was not granted to me. I do not know the reason which I would not mind knowing.

"I have met a member of the board once last month. I would like to meet the members of the board to see if I could speak with them and get the possible reason and answer of my classification."

It is not hard to sympathize with the poignant plea "I do not know the reason which I would not mind knowing," especially after the Board had twice determined that a sufficient case has been presented to require reopening.

On March 21, 1969, the Board forwarded Bent's file to the Appeal Board, which on June 12, 1969, without reasons, classified him I–A. On June 27, 1969 an Order was issued to report for induction on July 9, 1969. (SSS Form 252). On July 2, 1969, Bent wrote requesting a two month postponement of induction. The Board records disclose that on July 8, 1969 he was advised by telephone that at a meeting on July 7, 1969 this request was denied. He reported at the induction center on July 9 but refused to submit to induction. The adjutant of the Armed Forces Examining and Entrance Station in his letter to the United States Attorney for the Southern District of New York describes what took place:

"2. Mr. Bent, a registrant for induction refused to take one step forward when his name was called by the Induction Officer, 1st Lieutenant James A. Kenny, FV 3206082. He was then informed that his refusal constituted a felony under the provisions of the Military Selective Service Act of 1967, and that conviction of such offense under the provisions of civil proceedings would subject him to be punished by imprisonment for not more than (5) years or a fine of not more than $10,000.00 or both. He was then informed again of the imminence of his induction in accordance with par 40, AR 601–270 and his name was called by the Induction Officer. Mr. Bent, persisted in his refusal to be inducted and did not take one step forward. Registrant bases his refusal on his personal beliefs."

The personal beliefs to which the letter refers are outlined in a written statement given by Bent at the time (item 4 in the Selective Service file, Exhibit G–1) in which he reasserts that he has wrongfully been deprived of a hardship deferment classification.

Significantly, although Bent was advised at the Armed Forces Examining and Entrance Station that his refusal to submit to induction would subject him to criminal penalties, he was not advised, so far as the record discloses, that the alternative remedy of submitting to induction and seeking judicial review by way of habeas corpus was available to him.

On March 10, 1971 a grand jury in the Southern District of New York handed down an indictment (Exhibit G–4) charging Bent with failing to submit to induction. Bent retained counsel. On April 2, 1971 he appeared before Judge Pollack in the Southern District of New York, where this colloquy took place:

"MR. TRUEBNER: (Assistant U. S. Attorney) Mr. Bent's action took place in 1969, at which point there were a number of personal matters concerning hardship and his inability to serve. There is not and never was a case of conscientious objection.

"If Mr. Bent feels his problems are sufficiently in order at this point, the government, with the court's permission, would perhaps be agreeable to dispose of the criminal matter if he now felt able to comply with the order issued some time ago.

"THE COURT: You will have to take that up with Mr. Gutman. Discuss it with your client and in the event you have anything to say to Mr. Truebner report to him in a week.

You have received a very generous offer in this regard in the sense that the government is not seeking to take advantage of any technical omission so

far as the criminal case is concerned. Am I correct about that?

"MR. TRUEBNER: That is correct, your Honor.

"MR. DOERNBERG: (Mr. Bent's Attorney) Thank you, your Honor.

"MR. TRUEBNER: Thank you, your Honor."

The only thing the United States Attorney asked in exchange for disposing of the criminal matter was that Bent now comply with the order to submit to induction. He was not asked and did not agree to give up the right to seek judicial review of his classification by post induction habeas corpus. Clearly his attorney had no such understanding for on April 13, 1971, the day before Bent submitted to induction and before the indictment was nolle prossed he had Bent execute an affidavit in support of a petition for habeas corpus. That affidavit, which was attached to Bent's motion for a temporary restraining order and was acted upon when the district court issued such an order says:

"2. On Wednesday, April 14, 1971, I will submit to induction into the Armed Forces of the United States.

"3. I believe the order with which I am complying to be an illegal order, and I have directed my attorneys to promptly file an application for relief in the United States District Court of the area to which I am first assigned."

See the suggested procedure for seeking post-induction habeas corpus in Selective Service Law Reporter, ¶ 3104.

■ On April 19, 1971, the indictment was nolle prossed. The nolle prosequi (Exhibit G–3) stated:

"3. On April 4, 1971, defendant indicated to the Court that he was now willing to comply with his induction order, Court proceedings were adjourned to allow him to report for induction.

4. On April 14, 1971, defendant was inducted into the United States Army.

5. Under the circumstances, further prosecution of this case is not necessary."

The nolle prosequi is consistent with the colloquy before Judge Pollack and with Bent's subsequent actions. All that was asked of him was that he submit to induction. This he did. There is nothing whatsoever in the record to support a finding that an agreement to waive judicial review of the Local Board classification was either sought by the government or made by Bent. The district court's finding that Bent "was favored by the dropping of the criminal charges against him on the representation that he would serve" is clearly erroneous. Thus the underlying factual basis for the court's legal conclusion that he is estopped from challenging his induction by way of habeas corpus does not exist.[1]

There remains the question whether the agreement to submit to induction is itself a sufficient basis for an estoppel from seeking judicial review. An application of estoppel in such circumstances would in our view be an aberration when one considers the somewhat tortuous history of judicial review of Selective Service board decisions.

Prior to Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), it was generally held that a registrant could not challenge his classification in a prosecution for failure to submit to induction. *See* United States v. Pitt, 144 F.2d 169, 173 (3d Cir. 1944); United States v. Rinko, 147 F.2d 1 (7th Cir.

---

1. United States ex rel. Deans v. Clifford, 420 F.2d 30 (3d Cir. 1970), which the district court cited and upon which the government places heavy reliance, is inapposite. In *Deans*, the relator had the benefit of a trial at which he could have challenged the validity of his induction order and in which he was convicted. After conviction, in order to avoid a jail sentence, he was inducted into the Army pursuant to Executive Order 11,325, 32 C.F.R. § 1643, by falsely representing that an indictment against him for embezzlement had been dismissed. He then sought habeas relief, alleging that the embezzlement indictment made his induction illegal. We held that he was estopped because of his misrepresentation.

1945); Gibson v. United States, 149 F. 2d 751 (8th Cir. 1945); Koch v. United States, 150 F.2d 762 (4th Cir. 1945). It was also generally held that the habeas corpus method of obtaining judicial review was only available after a registrant submitted to induction. *See* United States v. Grieme, 128 F.2d 811 (3d Cir. 1942); United States v. Mroz, 136 F.2d 221 (7th Cir. 1943); Biron v. Collins, 145 F.2d 758 (5th Cir. 1944); Fujii v. United States, 148 F.2d 298 (10th Cir. 1945); Gibson v. United States, *supra*. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), held that in order to assert the defense of improper classification in a criminal case a registrant must have exhausted the administrative stages of the selective service induction machinery by reporting to the induction center and completing all steps up to actual induction.

Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944), held that a registrant who in compliance with *Falbo* took all steps up to actual induction but refused to be inducted did not thereby subject himself to military jurisdiction. In *Estep*, 327 U.S. at 119, 66 S.Ct. at 426, the Court said:

> "By its terms the Act of Congress enlisted the aid of the federal courts only for enforcement purposes. Sec. 11 makes criminal a wilful failure to perform any duty required by a registrant by the Act or the rules or regulations made under it. An order to report for induction is such a duty; and it includes the duty to submit to induction. Billings v. Truesdell, [321 U.S. at page 557, 64 S.Ct. at page 746]"

It went on to reject those earlier cases which had held that an improper classification could not be raised in defense of a criminal charge of failing to submit to induction, reasoning:

> "If § 11 were not construed to permit the accused to defend on the ground that his local board acted beyond its jurisdiction, a curious result would follow. The remedy of *habeas corpus* extends to a case where a person 'is in custody in violation of the Constitution or of a law . . . of the United States . . .' R.S. § 753, 28 U.S.C. § 453. It has been assumed that *habeas corpus* is available only after a registrant has been inducted into the armed services. But if we now hold that a registrant could not defend at his trial on the ground that the local board had no jurisdiction in the premises, it would seem that the way would then be open to him to challenge the jurisdiction of the local board after conviction by *habeas corpus*. The court would then be sending men to jail today when it was apparent that they would be released tomorrow." 327 U.S. at 123–125, 66 S.Ct. at 428 (footnotes omitted).

In other words, the availability of judicial review was recognized in criminal cases because it was in any event available in habeas corpus cases once the defendant was in custody. The government has always conceded that habeas corpus remains available despite the silence of § 10(b)(3) of the Selective Service Act. *See*, e. g., Oestereich v. Selective Service System, 393 U.S. 233, 235, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). Undoubtedly that concession is well advised. U.S.Const., Art. I, § 9, cl. 2; amend. V. When the government has obtained submission to an induction order it has obtained everything that the criminal sanction was ever intended to accomplish. Having obtained submission to induction it has given up nothing which can be said to be a consideration, quid pro quo, or change of position on which to base an estoppel against seeking judicial review. Indeed we have been told often enough by representatives of the government that post-induction habeas corpus is the preferred method of judicial review, and the *nolle prosequi* here is entirely consistent with that position.

█ There remains the district court's suggestion that Bent must exhaust in-service administrative remedies. At oral argument the government conceded that it would not press this position as a

separate ground for upholding the denial of habeas corpus. That concession seems correct, for assuming the illegality of the induction order, and hence of the in-service custody, nothing in the habeas corpus statute, 28 U.S.C. § 2241 et seq. suggests that the federal courts must await the exhaustion of in-service remedies to which the petitioner should never have been subjected. *Compare* 28 U.S.C. § 2254(b). No notions of federal-state comity operate here.

■ We come, then, to the merits of the petition. As we pointed out above, Bent's file presents a case in which the Local Board could certainly have granted a hardship deferment. Obviously the Board thought so as well, since it twice reopened his classification. *See* 32 C.F.R. § 1625.2. Bent, the Appeal Board, and we are equally in the dark as to what prompted the adverse decision. Very possibly the reasons for that decision were entirely proper and would be sustained if we knew them. On the other hand, as in United States ex rel. Kameshka v. Neff, 446 F.2d at 1169, there is the distinct possibility that the Board's decision was prompted by the proximity to Bent's twenty sixth birthday. It may have been prompted by the fact that he had sired an illegitimate offspring, or for some other impermissible reason. Bent specifically requested that he be informed of the Board's reasons. In urging that the order to report for induction is invalid he relies on Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970); United States v. Speicher, 439 F.2d 104 (3d Cir. 1971); United States v. Crownfield, 439 F.2d 839 (3d Cir. 1971); United States v. Merkle, 444 F.2d 411 (3d Cir. 1971) and United States v. Hershey, 451 F.2d 1007 (3d Cir. 1971). He urges that at least when a registrant requests reasons for Board action they should be given.

In each of these cases we held that orders to report for induction were invalid where no reasons were given for the rejection of a request for conscientious objector status. We have not heretofore applied the *Scott* rule to any claimed classification except that of conscientious objection. The government contends that we should not. Yet the reason for the *Scott* decision—the facilitation of judicial review [2]—applies with equal force to hardship claims. Moreover the application of the "reasons" requirement to hardship claims will impose a much lesser burden on the Selective Service System. This is true, first, because, at least judging from the experience of the federal courts in this Circuit, there are many fewer such claims than conscientious objector claims, and second, because the factors to be considered are more objectively demonstrable and the judgments to be articulated far less sophisticated. Moreover we may be less concerned about possible retroactivity because of the smaller numbers involved.

A recent action of the Congress affords us guidance. The Draft Extension Act, Pub.L. No. 92–129, passed on September 28, 1971, adds to the Selective Service Act of 1967 this provision:

"Procedural Rights

"Sec. 22(a) It is hereby declared to be the purpose of this section to guarantee to each registrant asserting a claim before a local or appeal board, a fair hearing consistent with the informal and expeditious processing which is required by selective service cases.

"(b) Pursuant to such rules and regulations as the President may prescribe—

"(1) Each registrant shall be afforded the opportunity to appear in person before the local or any appeal board of the Selective Service System to testify and present evidence regarding his status.

"(2) Subject to reasonable limitations on the number of witnesses and the total time allotted to each registrant, each registrant shall have the

---

**2.** United States v. Speicher, 489 F.2d 104 (3d Cir. 1971) suggests that facilitation of administrative review is an additional reason.

right to present witnesses on his behalf before the local board.

"(3) A quorum of any local board or appeal board shall be present during the registrant's personal appearance.

"(4) In the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision." [3]

3. The legislative history of these provisions also affords guidance:

Difference No. 14

The Senate version of the bill provided a series of procedural reforms in the Selective Service System which would have guaranteed to each registrant asserting a claim before a local or appeal board a series of procedural rights as follows:

1. The opportunity to appear in person before any local or appeal board;

2. The right to present witnesses before a local board;

3. Attendance of a quorum of any local or appeal board during a registrant's personal appearance;

4. A written report upon request when a local or appeal board has rendered a decision adverse to the claim of a registrant; and

5. The right to be accompanied and advised by private counsel at a personal appearance before a local or appeal board.

The House bill contained no similar provisions.

The House conferees expressed the concern that some of these provisions would prevent Selective Service boards from carrying out their functions in an expeditious manner and might encourage harassing and delaying tactics by those desiring to disrupt the effective functioning of the Selective Service System. After extensive discussion the House conferees agreed to accept the Senate amendments with regard to items 1, 2, 3 and 4. The Senate conferees pointed out out that under the language of their amendment these rights would be granted pursuant to such rules and regulations as the President may prescribe and the regulations under which the rights were granted should be drafted in such a way as to preclude abuses and obvious delaying tactics. The Senate conferees pointed out further that the right to present witnesses is specifically subject under their amendment 'to reasonable limitations on the number of witnesses and the total time allotted to each registrant.'

With the understanding, therefore, that the regulations implementing these provisions will be drafted in such a way as to protect the orderly and efficient functioning of the Selective Service System and not result in an unreasonable burden on local draft boards, the House accepted the Senate position on items 1-4.

The conferees agreed that granting the right of counsel at appearances before local and appeal boards would require an unacceptable increase in the workload of local boards, could not reasonably be instituted without the retention of an extensive legal apparatus to provide attorneys for each local board, and might result in inequities to registrants, giving an advantage to those whose economic status makes it easier for them to obtain counsel."

Pamph. No. 8 U.S.Code Cong. & Admin.News '71 at 2196–2197.

4. The proposed Selective Service regulations implementing the Draft Extension Act also entitled a registrant to a statement of reasons whenever a local or appeal board takes any action which might alter his classification.

Proposed regulation 1623.1(b) provides:

"Since it is imperative that appeal agencies have available to them all information on which the local board determined the registrant's classification, oral information shall not be considered unless it is summarized in writing and the summary placed in the registrant's file. Under no circumstances shall the local board rely upon information received by a member personally unless such information is reduced to writing and placed in the registrant's file."

This policy of facilitating review is implemented in the following Sections:

Proposed regulation 1623.4(c) provides:

"In the event that the local board classifies the registrant in a class other

This new provision is of considerable significance for in subparagraph (4) it adopts substantially the rule, for all deferment or exemption claims, which in *Scott* we announced for conscientious objector claims. We need hardly concern ourselves further about the inconvenience to the Selective Service System which may be caused by the courts which insist upon administrative due process. Congress has in Section 22 gone much further than the courts have heretofore seen fit to go.[4]

Because a statement of reasons is as essential for meaningful administrative and judicial review of the rejection of a hardship claim as for the rejection of a conscientious objector claim, because that requirement is no more onerous with respect to a hardship claim than with respect to a conscientious objector claim, and because Congress has concurred in the judgment of many courts that a statement of reasons is an appropriate procedural right, we hold that at least in cases where after a hardship claim is rejected the registrant has requested reasons, the failure to furnish some statement of reasons invalidates the order to report for induction.

The order denying the petition for a writ of habeas corpus will be reversed and the cause remanded to the district court for proceedings consistent with this opinion.

than that which he requested it shall record its reasons therefor in his file. The local board shall inform the registrant of such reasons in the manner prescribed by the Director of Selective Service."

Proposed regulation 1624.5 provides:

"If the local board determines that the information presented at the registrant's personal appearance does not justify a change in the registrant's classification or if a registrant for whom a personal appearance is scheduled fails to appear for such personal appearance it shall not reopen the registrant's classification, but by letter, it shall promptly notify the registrant of its decision not to change his classification and, by a brief statement, of the reasons therefor."

Proposed regulation 1626.4(i) provides:

"In the event that the appeal board classifies the registrant in a class other than that he requested it shall record its reasons therefor in his file. Upon the receipt by the local board of a written request by the registrant it shall furnish to such registrant a brief statement of the reasons for the decision of the appeal board."

36 Fed.Reg. 21072, 21076–78 (1971).

Thus the Selective Service System has itself seen fit to impose on local and appeal boards a more onerous burden than we do here.