**William G. CALE, Jr., Appellant,**

v.

**Thomas M. VOLATILE, Commanding Officer Afees and Secretary of Defense.**

**No. 71-1500.**

United States Court of Appeals, Third Circuit.

Argued April 11, 1972.

Resubmitted Under Third Circuit Rule 12(6), Aug. 18, 1972.

Decided Sept. 7, 1972.

John David Egnal, Egnal & Egnal, Philadelphia, Pa., for appellant.

Malcolm L. Lazin, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before HASTIE, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This challenge to appellant's induction into the Army is an appeal from a denial of habeas corpus, D.C., 325 F.Supp. 1310, and requires us to decide whether the processing by the Selective Service System was defective because the local board failed to set forth reasons for a denial of a requested occupational deferment. The resolution of this question calls for the following analysis:

1. Whether the statement of reasons requirement of Scott v. Commanding Of-

ficer, 431 F.2d 1132 (3d Cir. 1970), should be extended to classification requests based on occupational deferments;

2. If so, whether presentation of a *prima facie* case still continues to be a prerequisite to this requirement;

3. Whether the appropriate standards were met in this case.

### I.

Although addressing itself to a conscientious objector case in Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), the Supreme Court discussed the recent regulations of the Selective Service System, recounting that at least in appeal board cases, the new regulation, 1624.4(1) requires that if "the appeal board classifies the registrant in a class other than the one he requested, it shall record its reasons therefor in his file. The local board shall inform the registrant of such reasons in writing at the time it mails his notice of classification." 405 U.S. at 379, 92 S.Ct. at 1071. It is noteworthy that the regulation goes further than the new statutory mandate of the Military Selective Service Act of 1971, 50 U.S. C.A. App. § 471a, Procedural Rights § 22 (b) (4):

> In the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision.[1]

We recognize that the new statute and regulations are not applicable to this case; nevertheless, they reflect a congressional and administrative attitude to

1. See also new regulation relating to appearances before the local board effective March 12, 1972:

    § *1624.6 Procedure of local board following personal appearance.*

    (a) After the registrant has appeared before the local board, it shall again classify the registrant and, as soon as practicable thereafter, it shall mail notice thereof on Notice of Classification (SSS Form 110) to the registrant. In

the event that the local board classifies the registrant in a class other than that which he requested, it shall record its reasons therefor in his file. The local board shall inform the registrant of such reasons in writing at the time it mails his Notice of Classification (SSS Form 110).

(b) A notation that the registrant has appeared before his local board shall be entered on his Registration Questionnaire (SSS Form 100).

extend the statement of reasons requirement beyond conscientious objector cases.

■ In reviewing cases arising under the former selective service law, this court, too, has determined not to limit the doctrine of Scott v. Commanding Officer, *supra*, to conscientious objector cases. Emphasizing the necessity for local board findings in order to ensure meaningful judicial review of administrative action, we have required it in cases where the requested deferment was predicated on family hardship considerations. United States ex rel. Bent v. Laird, 453 F.2d 625 (3d Cir. 1971). We perceive no considerations inherent in the processing of a hardship deferment request which are not equally present where the request for deferment is based on an occupation. Accordingly, we hold that the reasons set forth in *Bent*, 432 F.2d at 632–634, are equally applicable here.

Moreover, if "[t]he purpose of our holding in *Scott*, as stated in that opinion, is to ensure meaningful judicial review of administrative action by requiring that the court have some idea of the basis for the decision of a local or appeal board," United States v. Crownfield, 439 F.2d 839, 842 (3d Cir. 1971), United States v. Neamand, 452 F.2d 25, 28 (3d Cir. 1971), there appears to be no convincing reason why we should limit the rule to those cases where the registrant has requested the reasons, United States ex rel. Bent v. Laird, *supra*. Providing a court with the necessary fundamentals to discharge review functions meaningfully should not be dependent on whether specific requests for findings have been made. See, United States v. Livingston, 459 F.2d 797 (3d Cir. en banc).

## II.

*Scott* required a statement of reasons where the denial of a *prima facie* claim is present. Thereafter there were some suggestions that the *prima facie* requirement be relaxed and that the *Scott* rule be made applicable to all conscientious objector requests, United States v. Stephens, 445 F.2d 192 (3d Cir. 1971) (Concurring Opinion), or at least should not be considered the *sine qua non* of the requirement that a local board make findings. See United States v. Neamand, *supra*. Whatever uncertainty as to the necessity of this requirement existed prior to March 21, 1972, the Supreme Court in *Fein* appeared to emphasize the *prima facie* requirement in its *obiter dicta* statement describing future courses of action available to Dr. Fein. The Court referred to the line of authority "exemplified by United States v. Haughton, 413 F.2d 736 (CA9 1969) to the effect that the failure of a local board to articulate in writing the reason for its denial of a conscientious objector classification is a fatal procedural flaw when the registrant has made a prima facie case for such status. . . . The rationale is that some statement of reasons is necessary for 'meaningful' review of the administrative decision when the registrant's claim has met the statutory criteria or has placed him prima facie within the statutory exemption, and his veracity is the principal issue." 405 U.S. at 380, 92 S.Ct. at 1072.

Although we do not construe this to be a direct ruling by the Supreme Court on the issue, the Court made two distinct references to a *prima facie* requirement, and we must acknowledge that there is not formidable judicial support for eliminating the *prima facie* requirement.[2]

2. The *prima facie* case requirement is contained in the roster of circuits adopting counterparts of our *Scott* rule cited in Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 1072, n. 7: See also United States v. Edwards, 450 F.2d 49 (CA1 1971); United States v. Lenhard, 437 F.2d 936 (CA2 1970); Scott v. Commanding Officer, 431 F.2d 1132 (CA3 1970); United States v. Broyles, 423 F.2d 1299 (CA4 1970); United States v. Stetter, 445 F.2d 472 (CA5 1971); United States v. Washington, 392 F.2d 37 (CA6 1968); United States v. Lemmens, 430 F.2d 619 (CA7 1970); United States v. Cummins, 425 F.2d 646 (CA8 1970); United States v. Pacheco, 433 F.2d 914 (CA10 1970).

United States v. Jones, 456 F.2d 627 (3d Cir. 1972); United States v. Wood, 454 F.2d 765 (4th Cir. 1972); United States v. Heigl, 455 F.2d 1256 (7th Cir. 1972). We conclude, therefore, that a registrant must still establish a *prima facie* case of entitlement before a statement of reasons for denial is required.

### III.

■ We now turn to the task of analyzing the factual presentation which confronted the Selective Service System. We do this to decide whether the registrant satisfied the *prima facie* requirement in order to entitle him to a statement of reasons for the denial of the requested classification.[3]

By brief and argument, appellant pegs his appeal on the theory that "[a] *prima facie* case of occupational deferment was presented to the Selective Service System." Thus it becomes necessary to emphasize that this was not a request for graduate student deferment, although correspondence from appellant dated June 30, 1970 (received by the local board July 3, 1970), suggests a request for relief from induction on the ground that he was "registered as a full time student at the University of Georgia and [is] presently doing ecological research in Yellowstone National Park." Indeed, appellant had retained 2–S student deferment classification from August 9, 1966, through July 15, 1969, when he was reclassified I–A.

On August 5, 1969, following his I–A reclassification, appellant requested a personal appearance before the board. By letter dated January 21, 1970, the board advised: "your request for personal appearance before the Local Board has been granted and you should appear at the above address on 27 Jan. 1970 at 2:45 p. m." The letter was addressed to the registrant at his home and was received by his father the next day, who testified that he communicated the contents thereof to his son on the same day. The registrant thereupon dispatched a letter to the board, which, with accompanying letters, forms the basis of registrant's claim for occupational deferment:

> 250 Little St.
> Athens, Ga. 30601
> January 23, 1970

Local Board No. 58
Fidelity-Lansdowne Bldg.
Lansdowne & Baltimore Ave.
Lansdowne, Pa. 19050

Dear Sirs:

Due to the relatively short notice and the great distance involved, I will not be able to keep my appointment for a personal appearance before the local board. However, in lieu of that, I submit this letter for consideration. I have requested certain of my colleagues to forward letters in support of my statements.

I am currently pursuing a graduate degree in ecology at the University of Georgia and am a member of the Institute of Ecology at that university. Part of my duties include teaching of undergraduates in biological and pre-medical curriculums. I have conducted original ecological research at the Savannah River Ecology Laboratory under a fellowship from the Atomic Energy Commission's Division of Biology and Medicine and will do continuing environmental work there beginning in June. There is little room for doubt that there is a pressing and immediate need for trained ecologists in a world which is polluting its air with harmful toxins, destroying its water resources with a variety of effluents, and endangering all that lives with the ever present threat of atomic radiation or famine from over population. President Nixon has declared that the dec-

---

3. In selective service cases, a *prima facie* case is present "if a registrant has presented facts which, if true and uncontradicted by other information contained in the file, would be sufficient under the regulations to warrant granting his requested classification." . . . Hunt v. Local Board No. 197, 438 F.2d 1128, 1144 (3d Cir. 1971) (Dissenting Opinion).

ade of the seventies be a time to cure the many ills besetting our environment. If the challenge is to be met, trained individuals are an obvious prerequisite. Thus, as a teacher and as a student in a field of high priority in the national interest, I request an occupational deferment.

> Sincerely yours,
> /s/ William G. Cale, Jr.
> William G. Cale, Jr.
> Sel. Serv. No 36–58–47–1439

On January 27, 1970, the date set for registrant's personal appearance, the record indicates that the board met and took the following official action: "Case reopened. Class I–A. Mail SSS Form 110. Mail SSS Form 111 to person(s) entitled to receive such notice (1623.4)." The minutes file of registrant, page 8, reflects the following entry: "Entire file reviewed and considered. Classification reopened Class I–A."

Registrant took an appeal to the appeal board. His file was forwarded there March 10, 1970, and returned April 16, 1970. By Form 110, dated April 17, 1970, he was notified that the appeal board had retained him in Class I–A. On the same date Form 111 was mailed to the Savannah River Ecology Laboratory.

Meanwhile the registrant had been ordered to report for a physical examination on March 6, 1970, but by request dated February 28, 1970, he asked that this process be conducted in Georgia because, in his words, he was "Attending the Univ. of Ga." He was examined on April 2, 1970, and found acceptable. On June 27, 1970, he was ordered to report for induction on July 7, 1970.

Significantly, although registrant now is contending that he made out a *prima facie* case for *occupational* deferment, in January, 1970, to avoid induction in July, he arranged to have dispatched to the Local Board a statement that he was a full time graduate student. Carl W. Helms, graduate coordinator, Department of Zoology, University of Georgia, notified the Board by letter of June 29, 1970:

Please be informed that Mr. William G. Cale, Jr., of the Zoology Department is currently taking 5 credit hours of Zoology 900 in summer school under the direction of Dr. R. G. Wiegert and is considered a full-time student taking a full course load. If at all possible, we would like to see Mr. Cale complete this work.

This information is being sent to you at Mr. Cale's request. If any further information can be of assistance, please let me know.

The registrant himself sent the following letter on June 30, 1970:

I write regarding my notice of induction for July 7, 1970. I am now and have been since June 15 registered as a full time student at the University of Georgia and am presently doing ecological research in Yellowstone National Park. I have requested my department [Department of Zoology, University of Georgia] to forward the forms verifying this. I therefore request that my induction be postponed. Please change my local address to the above Montana address.

On July 6, 1970, he received permission by telephone to postpone induction until September 1970, which was reduced to writing in Form 264: "By authority of 1632.2 Enable registrant to complete semester in graduate school."

By letter of August 18, 1970, he received orders to report September 2, 1970. His mother responded by letter of August 23, 1970, stating: "It had been our understanding that the board agreed to let our son *finish his summer school* with the University of Georgia. It is not over until later September." (Emphasis supplied.) His induction was again postponed. By letter of September 17, 1970, he was ordered to report October 2, 1970.

Attorney John David Egnal then became counsel of record and by letter dated September 28, 1970, suggesting that his client had a physical disability, stated "I believe the findings set forth warrant a review of his file to determine whether he is fit for military service."

Thereafter the "Minutes of Action—Continuation Sheet," page 8, reveals the following entries:

9–30–70  File forwarded to State Headquarters per request

10–2–70  Induction Stopped, Congressional Inquiry

By letter of October 19, 1970, the registrant was advised that "the evidence furnished was not sufficient to warrant a change in your medical acceptability." He was ordered to report for induction, and was inducted on November 3, 1970. This habeas corpus proceeding immediately followed.

Appellant argues, and we agree, that the controlling regulations are 1622.22 (a) and 1622.23(a). The former provides: "In Class 2–A shall be placed any registrant whose employment in industry, or other occupation or employment, . . . or whose activity in research, or medical, scientific, or other endeavors as found to be necessary to the maintenance of the national health, safety or interest."

1622.23(a) . . . a registrant's employment in industry or other occupation, service in office, or activity in research, or medical, scientific, or other endeavors, shall be considered to be necessary to the maintenance of the national health, safety, or interest only when all of the following conditions exist:

  (1) The registrant is, or but for a seasonal or temporary interruption would be, engaged in such activity.

  (2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.

  (3) The removal of the registrant would cause a material loss of affectiveness in such activity.

Appellant contends that 1622.23(a) defines the parameters of a *prima facie* case of occupational deferment and that his factual presentation brought him within its boundaries. We agree with appellant's definition, but do not agree that he met the qualifications.

If he was to qualify, it had to be as a teacher or a researcher, and not as a student *qua* student. In January, 1970 he represented that he was a part-time teacher and had "conducted original ecological research at the Savannah River Ecology Laboratory under a fellowship from the Atomic Energy Commission's Division of Biology and Medicine and will do continuing environmental work there beginning in June. There is little room for doubt that there is a pressing and immediate need for trained ecologists in a world which is polluting its air with harmful toxins, destroying its water sources," etc. Supplementing this statement were letters from the Zoology Department head stating that the registrant is "employed ⅓ time as a Teaching Assistant in this department while conducting graduate work in Ecology;" from Professor Patten stating that registrant is a first year student in good standing pursuing a Ph.D degree, whose "progress is good, and I see nothing except his draft status preventing him from finishing his education on schedule. . . . There is a critical shortage now for qualified scientists in this area, and this is reflected constantly in my mail in the form of requests for new Ph.D's to fill positions." [4]

The Director of the Savannah River Ecology Laboratories, Atomic Energy

---

**4.** The regulations distinguish between an occupational deferment, 1622.22, 1622.23 and graduate student deferment, 1622.25. The latter category is not a 2–A deferment. Section 1622.25(a) provides: "In Class 2–S shall be placed any registrant who is satisfactorily pursuing a course of graduate study in medicine, dentistry, veterinary medicine, osteopathy or optometry, or in such other subjects necessary to the maintenance of the national health, safety, or interest as are identified by the Director of Selective Service upon the advice of the National Security Council."

Appellant specifically restricts his contention on the occupational deferment to provisions of § 6(h)(2) of the statute and §§ 1622.22 and 1622.23, properly recognizing the basic distinction between a deferment based on occupation and one based on graduate studies, 1622.25.

Commission, reported that the registrant was doing thesis work at the university "in connection with work here at the Savannah River Ecology Laboratory. His work has to do with gathering basic data for studies of the effects of nuclear warfare on American Ecological Systems. This work is immensely important if we are to deal effectively with the Civil Defense Aspects of preparation for a nuclear war. Mr. Cale is an excellent student and his work is progressing well. I feel that interruption of his work at this time would be most unfortunate, not only for his own career but also because without him we would be hard-pressed to gather all of the data which we need in this vital field."

Measured against the three requirements of 1622.23(a) it becomes readily apparent that the registrant failed to set forth a *prima facie* case of occupational deferment. He was not a full time teacher. He was, at most, a first year Ph.D graduate student, as described by Professor Patten. Although associated with the Savannah River Laboratory, there was no representation by it that he could not "be replaced because of a shortage of persons with his qualifications or skill in such activity." 1622.23(a) (2). The Director said there is a "pressing need for trained ecologists." At best, the registrant was simply a student engaged in the process of becoming a "trained ecologist." Moreover, later developments indicated that despite the director's suggestion that the registrant would do "continuing environmental work there [at the Savannah River Laboratory in Georgia] beginning in June," when that month came, the registrant was employed over a thousand miles to the west in Yellowstone National Park. Whether viewed prospectively or retrospectively, it cannot be gainsaid that registrant failed to prove that he could "not be replaced" at the Savannah River Laboratory.

Moreover, we cannot ignore the record: the registrant had his physical examination transferred to Georgia solely on the theory that he was a student there; for the same representation he and his family were successful in delaying orders for induction originally scheduled for July, 1970 and September, 1970. In addition, by letter of July 24, 1970, he apparently wrote to the Selective Service System making inquiries as to graduate student deferment. Moreover, by letter of June 29, 1970, the Department of Zoology classified him as "a full-time student taking a full course load."

■ Alternatively, appellant offers the *post hoc ergo propter hoc* argument that by virtue of the local board's reopening of his classification at the meeting of January 27, 1970, we must conclude as a matter of law that the board found that a *prima facie* case had been established. For authority they cite the observation of Judge Rosenn in United States v. Stephens, 445 F.2d 192, 196 n. 6 (3d Cir. 1971): "The fact that the board reopened his classification following his personal appearance *suggests* that they *may* have felt that a *prima facie* case had been presented." (Emphasis supplied.) The double contingent uncertainty of this language hardly achieves the mandatory quality read into it by appellant. The regulations provide for a reopening under various circumstances,[5] but a reopening does not have the effect of a *prima facie* determination that the registrant is entitled to the requested classification. The regulations explicitly provide that the sole effect of a reopening is to afford the board a *de novo* consideration of the registrant's classification, "in the same manner as if he had never been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before the classification was reopened." § 1625.11.

---

5. At the request of the registrant, a dependent, or one making an occupational deferment request, § 1625.2; at the request of the State Director of Selective Service, § 1625.3(a); or, whenever facts are presented to the local board which

■ But the question is not free from doubt. In a memorandum filed in the Supreme Court by the Solicitor General in Joseph, Petitioner, v. United States of America, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972), the argument advanced by this appellant received the apparent endorsement of the Solicitor General:

> Its action [reopening of classification by the local board] must be viewed as based on a finding that the petitioner had presented a *prima facie* case of conscientious objection; it seems to us inappropriate to ask this Court to excuse the failure of a local board to state reasons on the basis of a speculative assertion that the board might have acted in violation of the reopening regulation by reopening the classification without finding that the petitioner had stated a *prima facie* case. [page 20]

establish registrant's eligibility for Class I because he is satisfactorily pursuing a full-time course of instruction, § 1625.3 (b).

6. We are unpersuaded by appellant's attack on Local Board Memorandum No. 96, in effect from April 25, 1968, to June 22, 1970, which provided: "A full-time graduate student shall not be considered for occupational deferment because he is engaged in teaching part time." We agree with Judge Wood's analysis of appellant's contention that LBM 96 constitutes an unauthorized interference with the decision-making responsibilities of the local board:

> Clearly the action of the Director in issuing LBM 96 was authorized by the Act and the Regulations. Given the authority, upon advice from the National Security Council, to identify needed personnel and those engaged in critical occupations, the Director here determined that graduate students were not, on the basis of activity in part-time teaching, such needed personnel.

> Furthermore, contrary to petitioner's contention LBM does not interfere with the decision-making authority of the local boards. The boards are given authority under § 1622.23 of the Regulations.

If this was the position taken by the government in confessing error in *Joseph,* a selective service case emanating from this circuit, 438 F.2d 1233 (3d Cir. 1971), basic maxims of equality of justice compel us to require the government to maintain a consistent position in the case at bar. For this reason, we conclude that the local board was compelled to give the registrant a statement of reasons at the time it reopened his classification on January 27, 1970.[6]

■ We have concluded that the August 5, 1970, letter from the State Director of Selective Service did not suffice as a required statement of reasons.[7] Without meeting the question of whether its substantive contents would so qualify, we are persuaded that it was not timely; it was not delivered prior to the registrant's appeal to the state board in March, 1970.

7.    Pennsylvania Headquarters
    SELECTIVE SERVICE SYSTEM
    Federal Office Building, 11th Floor
        228 Walnut Street
    Harrisburg, Pennsylvania 17108
                        Refer to File
                        d:58:8–6
            5 August 1970
Mr. William G. Cale, Jr.
152 Wayne Avenue
Springfield, Pennsylvania 19064
        SS No. 36–58–47–1439
Dear Sir:
  This will acknowledge your letter of 24 July 1970 and advise that there is no provision in the Military Selective Service Act of 1967 for graduate school deferment except registrants in the fields of medicine, osteopathy, optometry, dentistry, veterinary medicine, and podiatry.
  We note that your local board requested authority to postpone your induction until the September 1970 call, and this was granted by this Headquarters on 9 July 1970. This is the maximum entitlement we can grant.
                For the State Director:
                JOSEPH E. LINDSAY
                Lt. Colonel, AGC
                Manpower Division
cc: L.B. 58
This letter bears receipt stamp: "Aug. 7, 1970, Local Board No. 58, Fidelity-Lansdowne Bldg., Lansdowne and Baltimore Aves., Lansdowne, Pa. 19050."

Accordingly, we hold that the Selective Service System processing was defective and that the writ of habeas corpus should have been granted.

The judgment of the district court will be reversed.